IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KHYLE BRISCOE,

      Petitioner,                      No. CIV S-04-2175 FCD GGH P

   vs.

A.K. SCRIBNER, et al.,              <u>ORDER AND</u>

      Respondent.             <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction for murder, robbery, burglary and the finding that he personally used a firearm in the commission of all three counts. Petitioner was sentenced to life without the possibility of parole after the jury further found as a special circumstance that count one was committed while petitioner engaged in the commission of robbery and burglary.

        On March 3, 2006, this action was administratively stayed so that petitioner could exhaust additional claims in state court. Pending before the court are petitioner's September 15, 2006, motions to lift the stay and for leave to file an amended petition. On November 30, 2006, a hearing was held regarding these motions. Stephanie Adraktas appeared on behalf of petitioner. Moona Nandi appeared on behalf of respondent.

In the motion to lift the stay, petitioner states that on June 14, 2006, the California Supreme Court denied his exhaustion petition without citation to authority. Good cause appearing, the stay is lifted and this action is reopened.

The court now considers petitioner's motion to file an amended petition. The original petition raised 10 claims. The amended petition includes 6 new claims. Respondent argues that the new claims are barred by the statute of limitations and do not relate back pursuant to Fed. R. Civ. P. 15.

Respondent's opposition contains a factual summary which appears accurate. For purposes of these findings and recommendations only, it is adopted below.

> On April 2, 1998, robbery victim Ben Parovel shot and killed perpetrator Shaun Pina. Petitioner, who was Pina's co-perpetrator, was charged with Pina's murder under a provocative act theory. People v. Washington, 62 Cal.2d 777 (1965); People v. Gilbert, 63 Cal.2d 690 (1965).
>
> On the night of the murder, at approximately 5:30 p.m., Alisha Rozadilla went to her boyfriend Ben Parovel's home in Vacaville. While Parovel was out of the house, petitioner and Pina came to the door looking for him. Rozadilla said he was not home and closed the door. When Parovel returned to the house a few minutes later, he found the pair waiting for him outside the house. They said they wanted to purchase some marijuana. Parovel agreed to sell them some and invited them in.
>
> When Parovel entered the house, he picked up his Beretta gun, which Rozadilla had brought out in fear of petitioner and Pina, and put it in his pocket. He took Pina into his bedroom to get the marijuana, and turned around to find him holding a Glock. Pina pointed the gun at Parolvel's head and demanded money. Parovel gave him $1500 out of his dresser drawer but Pina wanted more. In the meantime, petitioner came into the bedroom holding a .38 gun to Rozadilla's head.
>
> Parovel gave Pina marijuana and his Beretta. When petitioner and Pina continued to demand more money, Parovel walked into the living room. Rozadilla escaped while the three men struggled. While Parovel and Pina were fighting, Pina's Glock slid across the floor. Petitioner picked it up and pistol whipped Parovel about the head, hitting him four or five times while Pina held his legs down. At some point, Parovel saw the magazine slide out of the Glock. Petitioner still had the .38 in his other hand. Parovel believed Pina still had Parovel's Beretta.
>
> A few minutes later, Parovel broke free and ran to the front door. Petitioner ran after him and the two struggled. Parovel wrested the .38 away from petitioner and fired twice at Pina, killing him. At the time, Pina was thirteen or fourteen feet away, moving his arm as if signaling to someone. His body was partially obscured by a hedge and Parovel could not see if he still had Parovel's Beretta.

When police arrived shortly thereafter, Parovel went to talk to them, but before doing so, threw his marijuana, digital scale, and a magazine for his Beretta out the bathroom window.

Respondent argues that petitioner's claims are barred by the statute of limitations and do not relate back to the claims raised in the original petition pursuant to Fed. R. Civ. P. 15(c).

The original petition raised the following claims:

1. <u>Insufficiency of the Evidence of Provocative Act Murder</u>: The two provocative acts he committed, i.e. pistol whipping Parovel and holding a gun to Rozadilla's head, were not the proximate cause of Parovel's shooting of Pina.  Petitioner further argued that there was insufficient evidence supporting the robbery-murder and burglary-murder special circumstances the jury found true because the relevant statute required the death to result from the commission of the felony, whereas a provocative act murder results from a combination of 1) an act by the defendant above and beyond the felony itself and 2) a separate intervening act by a third party.

2. <u>Jury Instruction Error re: Elements and Sufficiency of Evidence of Provocative Act Murder</u>:  The trial court should have answered the jury's question whether a robbery at gunpoint constitutes a provocative act in and of itself in the negative rather than stating that the facts were for the jury to determining based upon the definition given in the instructions.  Petitioner further contended that the jury should have been instructed that in order for him to be liable for murder, Parovel's killing of Pina had to be not merely a response to his provocative act, but a subjectively reasonable response.

3. <u>Jury Instruction Error re: Need for Unanimity</u>: The trial court erred in telling the jury that so long as they agreed unanimously that he committed a provocative act, it was not necessary for them to agree on what that act was.

4. <u>Jury Instruction Error re: The Trial Court Erroneously Refused a Requested Instruction for the Lesser Included Offense of Involuntary Manslaughter</u>

5. <u>Denial of Right to Present Defense</u>: The trial court 1) improperly precluded him from impeaching Parovel with statements Parovel made to the police about his drug sales activity; 2) improperly restricted testimony petitioner sought to introduce regarding petitioner's mental defect; 3) improperly excluded testimony of a defense witness who would opine that the shooting was the result of a drug rip-off.

6. <u>Ineffective Assistance of Counsel:</u> Petitioner alleges that trial counsel failed to properly impeach Parovel with statements he made to Officer Villalobos, Officer Graham, and Detective Hamers that were inconsistent with one another and with statements had made at the preliminary hearing and trial.  Counsel was ineffective for failing to properly impeach Rozadilla with statements she made to Officer Graham that were inconsistent with statements she made at the preliminary

hearing and trial, with the fact that she was unable to identify petitioner from a photo lineup, and with a prior statement she made about the lighting in Parovel's home being very dark at the time of the incident. Counsel was ineffective for failing to adequately present evidence about petitioner's mental defect.

7. <u>Petitioner's Statements Improperly Admitted Into Evidence:</u> Petitioner argues that his following statements were improperly admitted into evidence: 1) statement he made to Officer Williams while in the emergency room on April 2, 1998, improperly admitted because it violated <u>Miranda v. Arizona</u>; 2) statement he made to Detective Donaldson while recuperating in the hospital on April 4, 1998, was improperly admitted because it violated <u>Miranda v. Arizona</u> and was involuntary; petitioner was denied a full and fair hearing with respect to these issues.

8. <u>Ineffective Assistance of Counsel:</u> Counsel failed to competently investigate and present evidence that would show that petitioner was in police custody while in the emergency room on April 2, 1998, and that <u>Miranda</u> warnings were required.

9. <u>Ineffective Assistance of Counsel:</u> Counsel should have objected to petitioner's sentence on grounds that the special circumstances were constitutionally impermissible and that his sentence was cruel and unusual; there was substantial mitigating evidence counsel failed to produce at the sentencing hearing.

10. <u>Cumulative Error</u>.

The proposed amended petition raises the following new claims:

11. <u>Newly Discovered Evidence Establishes that Parovel's Inconsistent Testimony was Unreliable Due to his Undisclosed Memory Impairment:</u> In 2005, petitioner's newly appointed counsel discovered that Parovel testified in an unrelated Texas murder prosecution approximately three years after petitioner's 1999 trial. In that testimony, Parovel asserted that he suffers from a memory impairment due to an accident that occurred in 1994. Parovel did not reveal his memory impairment in petitioner's case, even though he was questioned by the lead detective as to whether there was a medical reason for his memory lapses.

12. <u>Jury Instruction Error re: Law of Self Defense and Superceding Causation:</u> The trial judge erred in failing to instruct the jury that, under California law, the use of deadly force against an aggressor is unreasonable when an aggressor (here, victim Pina) ceases to be a threat. Moreover, the trial judge failed to adequately instruct the jury that causation was an element of the charged homicide offense. Specifically, the trial judge failed to instruct the jury that Parovel's acts, if unjustified under California law, would operate as an independent superseding cause terminating petitioner's potential vicarious liability for the charge homicide.

13. <u>Ineffective Assistance of Counsel:</u> Counsel should have impeached Parovel with photographs and evidence tending to establish that petitioner had mistakenly pistol whipped Pina rather than Parovel during a violent struggle in the dark hallway of Parovel's home.

4

14. <u>Violation of Petitioner's Right to Confrontation and Ineffective Assistance of Counsel:</u> Trial counsel was ineffective and petitioner was denied his right to confront witnesses because trial counsel failed to present Detective Hamers testimony concerning his criminal investigation of Parovel's drug dealing activities. Hamers should have been questioned about his investigation into Parovel's marijuana possession at the time of the Pina shooting and about the fact that Parovel had confessed to selling both marijuana and "crank." Hamers could also have testified that no charges were filed against Parovel in connection with these activities.

Trial counsel should have questioned Parovel about his motive to shade his testimony in favor of the prosecution's case due to the government's pending investigation of his drug dealing activities and the prosecutor's decision not to file charges against him.

15. <u>Brady Violation:</u> The prosecutor failed to disclose to the defense the existence and details of her decision not to file controlled substance charges against Parovel. Detective Hamers had investigated Parovel's drug dealing activities as part of his investigation of the Pina homicide. In response to petitioner's request for <u>Brady</u> material, the prosecutor should have disclosed that her office had declined to file charges.

16. <u>Ineffective Assistance of Appellate Counsel:</u> Appellate counsel was ineffective because he failed to raise claims 12, 13, and 14 on direct appeal.

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

1          The California Supreme Court denied petitioner's petition for review on January 3, 2002. Therefore, his conviction became final ninety days later on April 3, 2002. Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999) (direct review includes 90 days to file petition for certiorari). Because the new claims raised in the amended petition were not filed within one year of April 2, 2002, they are barred unless petitioner is entitled to statutory or equitable tolling.

          28 U.S.C. § 2254(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

          Petitioner filed a habeas corpus petition in the California Supreme Court on March 28, 2003, which was denied on October 13, 2004. Because this petition was filed prior to the expiration of the limitations period, petitioner is entitled to statutory tolling for the time this petition was pending, i.e. 565 days. Adding 565 days to April 3, 2003, would make petitioner's federal petition due October 19, 2004.[1] While petitioner filed his original federal petition on October 15, 2004, the new claims raised in the amended petition were not raised until petitioner filed the amended petition on September 15, 2006. Therefore, they are barred absent a relation back of the new claims, or a delayed start to the running of the limitations period.

          Petitioner suggests that the limitations period for claim 11, based on newly discovered evidence, should run from the date that present counsel discovered this evidence in 2005, rather than on the date his conviction became final. 28 U.S.C. § 244(d)(1)((D) (limitations period runs from date on which factual predicate of claims could have been discovered through exercise of due diligence). Petitioner argues that although this claim is based on Parovel's testimony in a Texas homicide prosecution in 2002, only with due diligence was it discovered in

---

[1] Petitioner is not entitled to statutory tolling based on the time his second exhaustion petition was pending in the California Supreme Court as this petition was filed after the limitations period had run.

6

2005.  At the November 30, 2006, hearing, petitioner's counsel informed the court that she discovered the basis for this claim in 2005 while reading a death penalty publication discussing the 2002 Texas case.

Acting with due diligence, the court does not find that petitioner could have discovered the grounds supporting claim 11 sooner than 2005.  The court does not find that due diligence requires petitioner or his counsel to research the criminal dockets of all 50 states in an attempt to find grounds to challenge his conviction.  Once petitioner's counsel discovered the grounds of claim 11 in 2005, she acted with due diligence in pursuing this claim.  Because this claim could not have been discovered sooner through the exercise of due diligence, the court finds that it is not time barred.

Petitioner suggests that the state prevented him from raising claim 15, i.e. a <u>Brady</u> violation, based on the state's failure to disclose the "deal" with Parovel that he would not be prosecuted with marijuana possession and possession for sale.  28 U.S.C. § 2241(d)(1)(b). Petitioner argues that given that the prosecuting attorney had three years to file charges against Parovel after the date the detectives' investigation into his activities was complete, he could not have discovered the non-filing decision until 2001.  The problem with petitioner's argument is that reasonable counsel should have asked Parovel himself at trial whether or not he had been offered a deal.  As discussed below, this is the basis for one of petitioner's ineffective assistance of counsel claims.  Had trial counsel asked this question, i.e. acted diligently, then she would have discovered the grounds for this claim at trial.  For these reasons, the court finds that the statute of limitations for this claim ran from the time petitioner's conviction became final.  In any event, even assuming that the limitations period ran from 2001, i.e. when the time to file charges ran, this new claim raised in the amended petition is still not timely.

The court now considers whether new claims 12, 13, 14, 15 or 16 relate back to any of the claims raised in the original petition.  Fed. R. Civ. P. 15(c) provides, in relevant part, that an amendment of a pleading relates back to the date of the original pleading when 1) relation

7

1 back is permitted by the law that provides the statute of limitations applicable to the action, or 2)
2 the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or
3 occurrence set forth or attempted to be set forth in the original pleading.

4        In Mayle v. Felix, 545 U.S. 644, 125 S. Ct. 2562 (2005) the Supreme Court held
5 that in habeas actions, the claims relate back if they share a common core of operative facts
6 uniting the original and newly asserted claims.

7        Petitioner argues that claim 12 relates back to claims 1 and 2.  The court begins by
8 describing the operative facts of each claim.  In claim 12, petitioner argues that the trial court
9 failed to instruct the jury regarding the law of self-defense and superseding causation as it
10 pertained to Pina's conduct. Amended Petition, p. 118.  In particular, petitioner argues that the
11 facts admitted at trial supported his defense that Pina was substantially disabled and did not
12 present an imminent threat to Parovel at the time of the shooting. Id., p. 119.  Petitioner argues
13 that the evidence supported his defense that Parovel shot Pina out of anger and a desire for
14 revenge. Id.  Petitioner cites the following facts to support this claim: 1) Pina had been beaten
15 and disarmed; 2) Parovel was much larger than Pina; 3) Pina had been seriously injured; 4)
16 Parovel admitted he did not see a gun in Pina's hand when he shot him. Id., p. 119-120.

17        In claim 1, petitioner argues that there was insufficient evidence to prove that he,
18 petitioner, had committed an intentional provocative act. Id., p. 31.  Petitioner argued that his
19 holding a gun to the neck of Rozadilla and pistol-whipping Parovel did not constitute intentional
20 provocative acts. Id., pp. 31-32.  In claim 2, petitioner argues that the trial court misinstructed
21 the jury regarding whether robbery at gunpoint constituted a provocative act. Id., p. 35.
22 Petitioner also argued the trial court erred in not instructing the jury that Parovel's killing of Pina
23 had to be a subjectively reasonable response to provocative conduct by petitioner. Id., p. 37.

24        The operative facts regarding claims 1 and 2 concern petitioner's conduct,
25 whereas the operative facts regarding claim 12 concern Pina's conduct and Parovel's perception
26 of it.  Accordingly, because these claims do not share a common core of operative facts, the court

finds that claim 12 does not relate back.

Petitioner argues that claim 13 relates back to claim 6. In claim 13, petitioner argues that counsel was ineffective for failing to investigate and present evidence impeaching Parovel's testimony that he was pistol whipped by petitioner. Petitioner argues that the police reports, autopsy report, photographs and description of the circumstances surrounding the crime indicate that petitioner while perhaps attempting to pistol whip Parovel actually struck Pina. Id., p. 123. The evidence indicated that Pina had injuries consistent with having been pistol whipped, whereas Parovel did not. Id., pp. 123-124.

In claim 6, petitioner argues that counsel failed to impeach Parovel with police reports wherein he stated during an interview that Pina had pistol whipped him, and not petitioner. Id., pp. 46-48.

While claim 6 involves impeachment evidence that Pina pistol whipped Parovel and claim 13 involves evidence that Parovel was not pistol whipped at all, the court finds that the operative facts are sufficiently similar, i.e. counsel's failure to investigate and present evidence impeaching Parovel's testimony that he was pistol whipped by petitioner. Accordingly, the court finds that claim 13 relates back to the original petition and is not time barred.

Petitioner argues that claims 14 and 15 relate back to claims 5 and 6. Claim 14 alleges that petitioner was deprived of his right to confront witnesses and the effective assistance of counsel based on counsel's failure to investigate and present evidence related to the criminal investigation of Parovel. Petitioner argues that reasonable counsel would have litigated the issues related to the criminal investigation of Parovel by 1) eliciting from Officer Benevides testimony that he had seized contraband from Parovel's premises on the night of the homicide; 2) offering into evidence the laboratory report and medical report indicating that Parovel was cleared for jail, demonstrating that Parovel was the subject of a criminal investigation; 3) cross-examining Parovel about the details of the pending criminal investigation against him; 4) eliciting from Detective Hamers the fact that he had conducted a criminal investigation of

1  Parovel that was related to the events surrounding the homicide; 5) investigating the disposition
2  of the criminal investigation of Parovel including the details of the prosecutor's decision to
3  forego charges. Id., p. 128. Petitioner argues that the counsel conducted this investigation, he
4  could have presented evidence that Parovel's testimony was tainted because he was the subject of
5  a criminal investigation by the same prosecuting authority that was prosecuting the Pina
6  homicide. Id.

7  Claim 15 alleges that the prosecution failed to disclose exculpatory information
8  relating to promises of leniency in the form of non-filing of controlled substance charges against
9  Parovel. Id., p. 130.

10  Claim 5 alleges that the trial court denied petitioner the right to present a complete
11  defense to the charges. Id., p. 40. Petitioner argues that at trial, the prosecutor attempted to
12  portray Parovel as a self-admitted marijuana user who only occasionally sold the drug. Id., p. 41.
13  Petitioner argues that defense counsel attempted to show that Parovel's testimony concerning the
14  nature and extent of his drug dealing was false and misleading, but the trial court largely
15  precluded petitioner from impeaching Parovel. Id. In particular, petitioner argues that the trial
16  court precluded him from presenting the testimony of Detective Hamers, ruling that counsel had
17  not laid an adequate foundation during her cross-examination of Parovel for subsequent
18  impeachment by way of Parovel's inconsistent statements to Hamers. Id. Petitioner also argues
19  that the trial court improperly ruled that his expert witness, William Zerby, could testify only
20  regarding whether he believed Parovel possessed marijuana for sale. Id., p. 44.

21  Claim 6 contains several subclaims of ineffective assistance of counsel one of
22  which is relevant to claims 14 and 15. In subclaim E, p. 60, petitioner alleges that counsel was
23  ineffective for failing to competently cross-examine and re-call Parovel as a witness. In
24  particular, petitioner argues that his counsel failed to competently impeach Parovel regarding his
25  drug dealing and efforts to conceal his drug dealing from investigating police. Id.
26  \\\\\

Petitioner argues that after Parovel testified as a prosecution witness, defense counsel did not request that he be subject to recall. Id. The following day, defense counsel told the court that she intended to call Detective Hamers to impeach Parovel's testimony regarding the breadth and extent of his drug dealing. Id. The court ultimately denied counsel's request to question Hamers on these matters on grounds that defense counsel had not directly examined Parovel on the topic at issue in order to give him an opportunity to explain or deny his statement to Hamers. Id., p. 61. The court stated that it would allow counsel to recall Parovel to the witness stand so that a proper foundation could be laid. Id. At this time, the prosecution informed that court that Parovel had made arrangements to fly out of town that night. Id. Following a discussion between defense counsel the prosecution, the court ruled that defense counsel could not call Detective Hamers to testify concerning the topic in question because Parovel was not properly subject to impeachment and because further cross-examination of Parovel on the nature and extent of his drug dealing was collateral and would not constitute a defense to the charges. Id.

        Claim 6 concerns counsel's failure to adequately cross-examine Parovel regarding his drug dealing and request that he be subject to recall. Claim 14 also concerns counsel's failure to adequately cross-examine Parovel regarding his drug dealing but also her failure to present additional evidence regarding this matter. Because both claims share a common core of operative facts, i.e. counsel's failure to present adequate evidence regarding Parovel's drug activities, the court finds that claim 14 relates back to the original petition.

        The operative fact of claim 15 is the prosecution's failure to disclose the promise of leniency to Parovel in the form of non-filing of controlled substance charges against him. Claim 5 concerns the trial court's refusal to permit Detective Hamers and petitioner's expert to testify as requested by defense counsel. Claim 6 alleges that counsel was ineffective for failing to adequately cross-examine Parovel regarding his drug activities. These claims do not share a common core of operative facts. Accordingly, the court finds that claim 15 does not relate back.

Claim 16 alleges that appellate counsel was ineffective for failing to raise claims 12, 13 and 14. As discussed above, claims 13 and 14 relate back to the original petition, whereas claim 12 does not. For the reasons discussed above, the court finds that claim 16 insofar as it concerns appellate counsel's failure to raise claims 13 and 14 relates back to the original petition, whereas claim 12 does not.

Having found that some of petitioner's claims do not relate back, the court considers whether petitioner is entitled to equitable tolling. The one year statute of limitations for filing a habeas petition may be equitably tolled if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Brambles v. Duncan, 330 F.3d 1197, 1202 (9th Cir. 2003), amended in other respects by 342 F.3d 898 (9th Cir. 2003). The prisoner must show that the "extraordinary circumstances" were the cause of his untimeliness. Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003). "Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). Petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." Id. Determining whether equitable tolling applies is a "fact-specific" inquiry. Fry v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001).

Petitioner argues that he is entitled to equitable tolling on three grounds. First, petitioner argues that governmental and witness misconduct interfered with the discovery and preparation of certain claims. The only time-barred claim to which this argument may apply is claim 14 alleging a Brady violation. As discussed above, the prosecution had until 2001 to prosecute Parovel. Following this time, the court would not find that the prosecution's failure to disclose the decision not to prosecute Parovel constituted an extraordinary circumstance outside of petitioner's control which prevented him from raising this claim in a timely federal petition. Accordingly, the court does not find that petitioner is entitled to equitable tolling on this ground.

Petitioner next argues that he is entitled to equitable tolling based on the ineffective assistance of trial and appellate counsel. Ordinary attorney negligence will not justify

1  equitable tolling.  <u>Spitsyn v. Moore</u>, 345 F.3d 796, 800 (9th Cir. 2003), as amended Nov. 3, 2003.
2  Where an attorney's misconduct is sufficiently egregious, it may constitute an "extraordinary
3  circumstance" warranting equitable tolling of AEDPA's statute of limitations.  <u>Id.</u>  The court
4  does not find that petitioner's trial or appellate counsel committed misconduct that was
5  sufficiently egregious so as to constitute an extraordinary circumstance warranting equitable
6  tolling.

7  Finally, petitioner argues that he suffers from organic brain disorder that interfered
8  with his ability to prepare and present his newly exhausted claims.  As noted by respondent in the
9  opposition to the pending motion, petitioner's original petition in this action, although filed in
10 pro per, was prepared by Harry Gruber, the deputy state public defender who represented
11 petitioner on direct appeal and in his state post-conviction proceedings.  Because petitioner has,
12 in essence, been represented by counsel during his entire post-trial proceedings, the court does
13 not find that his organic brain disorder interfered with his ability to present his newly exhausted
14 claims.

15 For the reasons discussed above, the court finds that petitioner is not entitled to
16 equitable tolling.

17 In conclusion, the court finds that claims 11, 13, 14 and 16, to the extent it is
18 based on appellate counsel's failure to raise claims 13 and 14, are timely raised.  Claims 12 and
19 15 are not timely and should be dismissed.

20 Accordingly, IT IS HEREBY ORDERED that petitioner's September 15, 2006,
21 motion to reopen the case is granted;

22 IT IS HEREBY RECOMMENDED that petitioner's September 15, 2006, motion
23 to amend be granted as to claims 11, 13, 14, 16 to the extent it is based on appellate counsel's
24 failure to raise claims 13 and 14; the motion to amend be denied in all other respects; and
25 respondent be ordered to file a response to the petition within thirty days of adoption of these
26 findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 2/13/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

bris2175.157