IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KHYLE BRISCOE,

     Petitioner,     No. CIV S-04-2175 FCD GGH P

    vs.

A.K. SCRIBNER, et al.,

     Respondents.    FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

  Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action is proceeding on the amended petition filed September 15, 2006. Petitioner challenges his 1999 conviction for murder, robbery, burglary and the finding that he personally used a firearm in the commission of all three counts. Petitioner was sentenced to life without the possibility of parole after the jury further found as a special circumstance that count one was committed while petitioner engaged in the commission of robbery and burglary.

  Pending before the court is respondent's July 27, 2007, motion to dismiss. On September 27, 2007, a hearing was held regarding this motion. Moona Nandi appeared on behalf of respondent. Stephanie Adraktas appeared on behalf of petitioner.

Respondent moves to dismiss claims 1, 2, 3, 4, and 7 on grounds that they are not exhausted. At oral argument on this motion, respondent's counsel conceded that claims 2, 3, and 4 are exhausted. After carefully considering the record, the court recommends that respondent's motion to dismiss be granted in part and denied in part as to claims 1 and 7.

II. <u>Discussion</u>

*Legal Standard for Exhaustion*

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondent's counsel. 28 U.S.C. § 2254(b)(3).[1] A waiver of exhaustion, thus, may not be implied or inferred. A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 276, 92 S. Ct. 509, 512 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1086 (9th Cir.), <u>cert. denied</u>, 478 U.S. 1021 (1986).

*Factual Background*

Respondent's November 14, 2006, opposition to petitioner's motion to amend contains a factual summary of petitioner's offense which appears accurate. For purposes of these findings and recommendations only, it is adopted below.

> On April 2, 1998, robbery victim Ben Parovel shot and killed perpetrator Shaun Pina. Petitioner, who was Pina's co-perpetrator, was charged with Pina's murder under a provocative act theory. <u>People v. Washington</u>, 62 Cal.2d 777 (1965); <u>People v. Gilbert</u>, 63 Cal.2d 690 (1965).
>
> On the night of the murder, at approximately 5:30 p.m., Alisha Rozadilla went to her boyfriend Ben Parovel's home in Vacaville. While Parovel was out of the house, petitioner and Pina came to the door looking for him. Rozadilla said he was not home and closed the door. When Parovel returned to the house a few minutes later, he found the pair waiting for him outside the house. They said they wanted to purchase some marijuana. Parovel agreed to sell them some and invited them in.

---

[1] A petition may be denied on the merits without exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2).

|   |   |
|---|---|
| 1 | When Parovel entered the house, he picked up his Beretta gun, which Rozadilla had brought out in fear of petitioner and Pina, and put it in his pocket. He took Pina into his bedroom to get the marijuana, and turned around to find him holding a Glock. Pina pointed the gun at Parovel's head and demanded money. Parovel gave him $1500 out of his dresser drawer but Pina wanted more. In the meantime, petitioner came into the bedroom holding a .38 gun to Rozadilla's head. |

When Parovel entered the house, he picked up his Beretta gun, which Rozadilla had brought out in fear of petitioner and Pina, and put it in his pocket. He took Pina into his bedroom to get the marijuana, and turned around to find him holding a Glock. Pina pointed the gun at Parovel's head and demanded money. Parovel gave him $1500 out of his dresser drawer but Pina wanted more. In the meantime, petitioner came into the bedroom holding a .38 gun to Rozadilla's head.

Parovel gave Pina marijuana and his Beretta. When petitioner and Pina continued to demand more money, Parovel walked into the living room. Rozadilla escaped while the three men struggled. While Parovel and Pina were fighting, Pina's Glock slid across the floor. Petitioner picked it up and pistol whipped Parovel about the head, hitting him four or five times while Pina held his legs down. At some point, Parovel saw the magazine slide out of the Glock. Petitioner still had the .38 in his other hand. Parovel believed Pina still had Parovel's Beretta.

A few minutes later, Parovel broke free and ran to the front door. Petitioner ran after him and the two struggled. Parovel wrested the .38 away from petitioner and fired twice at Pina, killing him. At the time, Pina was thirteen or fourteen feet away, moving his arm as if signaling to someone. His body was partially obscured by a hedge and Parovel could not see if he still had Parovel's Beretta. When police arrived shortly thereafter, Parovel went to talk to them, but before doing so, threw his marijuana, digital scale, and a magazine for his Beretta out the bathroom window.

*Claim 1*

Claims 1 alleges that there was insufficient evidence that petitioner committed provocative act murder. See Amended Petition, pp. 30-35. To put this argument in context, the court will summarize the relevant law regarding provocative act murder:

> A provocative act murder case necessarily involves at least three people–in our case, the perpetrator of the underlying offense, an accomplice, and a victim of their crime. (See People v. Superior Court (Shamis) (1997) 58 Cal.App.4th 833, 845-846 [68 Cal.Rptr.2d 388] (Shamis).) Under the provocative act murder doctrine, the perpetrator of a crime is held vicariously liable for the killing of an accomplice committed by the third party. (See People v. Gilbert (1965) 63 Cal.2d 690, 705 [47 Cal.Rptr. 909, 408 P.2d 365], judg. vacated on other grounds (1967) 388 U.S. 263 [87 S.Ct. 1951, 18 L.Ed.2d 1178]; see also Pizano v. Superior Court (1978) 21 Cal.3d 128, 135 [145 Cal.Rptr. 524, 577 P.2d 659]; Taylor v. Superior Court (1970) 3 Cal.3d 578, 582-583 [91 Cal.Rptr. 275, 477 P.2d 131], overruled on another ground in People v. Antick (1975) 15 Cal.3d 79, 92 fn. 12 [123 Cal.Rptr. 475, 539 P.2d 43].) By law, the felony-murder rule does not apply when an accomplice is killed at the hands of a crime victim rather than by the defendant. As such a killing does not occur in the perpetration of a felony, malice cannot be ascribed to the defendant under the felony-murder rule. [Citations.] However, when the perpetrator of a crime–with a conscious disregard for life–intentionally commits an act that is likely to result in death and the crime victim kills in reasonable response to that act, the perpetrator is guilty of murder. In this situation, the killing is attributable–not merely to the commission of a felony–but

3

to the intentional act of the perpetrator committed with conscious disregard for life. The victim's killing in self-defense is not deemed to be an independent intervening cause relieving the perpetrator of liability because the killing is a reasonable response to the dilemma thrust on the victim by the perpetrator's intentional act. [Citations.]

As with most criminal offenses, a provocative act murder has both a physical and a mental element that the prosecution must establish. [Citation.] To constitute the actus reus of provocative act murder, the defendant must commit an act that provokes a third party to fire a fatal shot. The mens rea element is satisfied if the defendant knows that his or her provocative act has a high probability–not merely foreseeable possibility–of eliciting a life threatening response from the person who actually fires the fatal bullet. [Citations.] Cases often discuss these two elements in terms of whether the defendant committed a provocative act which proximately caused the killing. [citations.]

The prosecution must establish that the defendant [footnote omitted] committed a provocative act. [Citations.] In cases in which the underlying crime does not involve an intent to kill–offenses such as robbery [footnote omitted] and burglary, the mere participation in the underlying criminal offense is not sufficient to invoke the doctrine of provocative act murder. The provocative act must be something beyond that necessary to commit the underlying crime. [Citations.] In every robbery, the possibility exists that a victim will resist and kill. The robber has little control over such a killing once the robbery is undertaken. To impose an additional penalty for the killing improperly discriminates between robbers, not on the basis of any difference in their conduct, but solely on the basis of a victim's response that the robber's conduct induced. [Citations.] However, circumstances set in motion by the defendant which are fraught with grave and inherent danger to life are sufficient to constitute a provocative act that allows a jury to raise an inference of malice. [Citation.]

*****

The prosecutor must also establish that the defendant's conduct proximately caused the killing. Courts use traditional notions of concurrent and proximate cause in order to determine whether the killing was the result of the defendant's conduct. [Citations.] To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical. [Citations.] A defendant's provocative act must actually provoke a victim's response resulting in an accomplice's death.

The timing of the events is critical. By necessity, the provocative act must occur before a victim may make a lethal response. [Citations.] There may be more than one act constituting the proximate cause of the killing. [Citations.] If the defendant commits several acts but only one of them actually provoked a lethal response, only that act may constitute the provocative act on which culpability for provocative act murder can be based. [Citations.] When the chain of causation is somewhat attenuated, the jury decides whether murder liability attaches or not. [Citations.]

1  People v. Briscoe, 92 Cal. App. 4th 568, 581-584, 112 Cal. Rptr. 2d 401, 411-414 (2001).

2          Respondent argues that part of claim one is unexhausted. In particular, at oral

3  argument respondent's counsel argued that petitioner's claim that his alleged provocative acts of

4  pistol whipping Parovel and putting a gun to Rozadilla's neck did not proximately cause the

5  killing of Pina were not exhausted. Respondent's counsel argued that in his petition for review

6  petitioner exhausted a claim that these acts did not constitute provocative acts per se but did not

7  raise the issue of proximate cause.

8          In the petition for review, petitioner argued, in relevant part,

9          6. Can one of two armed robbers be convicted of murder under the
            provocative acts doctrine when he commits no provocative acts during the
10          initial stage of the robbery, but forcibly intervenes in a struggle between an
            intended victim bent on escape, and a second armed robber, resulting in
11          the death of the second robber at the hands of the intended victim? (In re
            Joe R. (1980) 27 Cal.3d 496; People v. Johnson (1980) 26 Cal.3d 557;
12          Fiore v. White (2001) 531 U.S. 225; Jackson v. Virginia (1979) 443 U.S.
            307.)
13
            The Court of Appeal rejected a claim of insufficiency of evidence based on both
14          an inaccurate rendition of the record [footnote 4] and a flawed application of this

15          [Footnote 4: The numerous factual inaccuracies were brought to the Court
            of Appeal's attention in Argument I of the petition for rehearing.]
16
            Court's sufficiency analysis in provocative acts murder cases. [Footnote 5]
17
            [Footnote 5: See Exhibit A, pp. 11-16.]
18
            (In re Joe R., supra, 27 Cal.3d at pp. 506-508; People v. Antick (1975) 15 Cal.3d
19          79, 90-92; U.S.. Const. 14th Amendment.) In so holding, the Court of Appeal not
            only violated petitioner's Fourteenth Amendment right to be free of conviction
20          except upon proof of guilt beyond a reasonable doubt, but also arbitrarily denied
            petitioner of his federal due process rights by depriving him of a liberty interest
21          created by state law....

22  Motion to Dismiss, Exhibit 1.

23          The reference in the petition for review to petitioner's intervention in the struggle

24  between Pina and Parovel indicates that petitioner is challenging his pistol whipping of Parovel,

25  which occurred during the struggle. By asking whether petitioner could be convicted of

26  provocative act murder based on this conduct when he had committed no provocative acts during

the initial stages of the robbery indicates that petitioner is arguing that the pistol whipping did not proximately cause Pina's death. Although not a model of clarity, the court finds that the petition for review raised the claim that the pistol whipping of Parovel did not proximately cause Pina's death. Accordingly, the court finds that petitioner has exhausted this issue.

The petition for review does not focus upon an argument that petitioner's holding a gun to Rozadilla's head did not proximately cause Pina's death. The facts in the petition for review refer to petitioner intervening in the struggle between Pina and Parovel, but petitioner held the gun to Rozadilla's head before this struggle occurred. The question becomes whether a claim, whose legal basis is certainly exhausted, becomes unexhausted because a petitioner refers in his federal petition to another possible theory or factual circumstance which *respondent might raise* that could be used to defeat petitioner's argument. The undersigned will not stretch the reasons for exhaustion to defeat or delay the adjudication of this petition in such a situation. Petitioner made a general argument that the facts and circumstances were insufficient to establish causation for provocative act murder. While more of the established facts were discussed before the Court of Appeal than in the petition for review, this circumstance does not defeat exhaustion. Petitioner was in the position before the state supreme court of focusing upon the circumstance that he thought respondent would most likely raise to defeat the claim. Petitioner does not have to focus upon or negate all defensive arguments he thinks respondent would make in order to exhaust his claim.[2]

In this action, respondent is free *not* to refer to the Rozadilla circumstances if respondent so desires. In that instance, the Rozadilla circumstances are immaterial. If respondent desires to argue that the Rozadilla circumstances are facts upon which provocative act

\\\\\

---

[2] Thus, the situation here is quite different from that where the petitioner is affirmatively pointing to facts or circumstances on which to base his claim. In that situation, he must present the specific facts in his argument.

murder may be based – so be it. But, that will be respondent's argument within an exhausted claim.

*Claim 7*

Respondent argues that claim seven is not exhausted. Claim seven alleges that two statements petitioner made were taken in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966) and that he was denied a full and fair hearing as to these issues in state court. At oral argument, respondent's counsel argued that this claim was not exhausted because in state court, petitioner only alleged that he was denied a full and fair hearing. Respondent's counsel argued that the petition for review did not argue that the statements were taken in violation of Miranda.

The petition for review raised the following claim regarding Miranda violations:

> 8. Does a trial judge violate due process under the Sixth and Fourteenth Amendments when he (a) utilizes Penal Code section 1538.5, subdivision (I) to adjudicate a motion to exclude an inculpatory statement (the post-operation statement) on Miranda/voluntariness grounds [footnote omitted] where he heard the motion previously, while sitting as a magistrate; (b) refuses to afford de novo review based on a standard that took into account the truth or falsity of the statement; and (d) refuses to conduct any type of hearing upon a trial objection on Miranda/voluntariness grounds to another inculpatory statement (the emergency room statement)? (People v. Smithson (2000) 79 Cal.App.4th 480; People v. Markham (1989) 49 Cal.3d 63; Colorado v. Connelly (1986) 479 U.S. 157; Rogers v. Richmond (1961) 365 U.S. 534.)
>
> The decision of the Court of Appeal did not find a constitutional infirmity with the trial court's enigmatic procedural choices, relying on the analysis of the Third District in People v. Smithson, supra, 79 Cal.App.4th 480, as well as People v. Hansel (1992) 1 Cal.4th 1211 (See Exhibit A, pp. 30-34). However, the opinion of the Court of Appeal did not accurately set forth the facts concerning the procedures utilized by a trial judge sitting either as a magistrate or at trial. [Footnote omitted.] As a consequence of this misapprehension, the Court of Appeal neglected to address whether the magistrate's explicit reliance on a standard inconsistent with the Due Process Clause of the Fourteenth Amendment in the first ruling fatally infected the subsequent ruling at trial. (See Exhibit A, p. 34, fn. 16.) This Court denied appellant's petition for review in People v. Smithson, supra, 79 Cal.App.4th 480; two justices voted to grant the petition. (See order of this Court dated July 19, 2000.) Because the Court of Appeal has improperly expanded any legitimate language in Smithson, this Court should grant review to review the legitimacy of Smithson.

Motion to Dismiss, Exhibit 1, Petition for Review, pp. 8-9.

The petition for review clearly did not raise a claim alleging that petitioner's statements were taken in violation of Miranda. At oral argument, petitioner's counsel argued that his claim alleging that he did not receive a full and fair hearing necessarily implicated a claim that the statements were taken in violation of Miranda.

A state court's finding that statements were not taken in violation of Miranda is entitled to AEDPA deference. See 28 U.S.C. § 2254(d). State court factual findings regarding a Miranda issue are presumed correct. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption of correctness by clear and convincing evidence. Id. Pursuant to these standards, in order to exhaust his Miranda claim, petitioner must directly present this issue to the California Supreme Court. Petitioner may challenge the findings of fact made regarding this claim by, for example, demonstrating that did not receive a full and fair hearing in state court regarding this issue. By merely challenging the procedures used by the state court to evaluate his Miranda claim, petitioner does not exhaust this claim. A finding by the California Supreme Court that the correct procedures were followed in evaluating petitioner's Miranda claim does not necessarily address the issue of whether a Miranda violation occurred. Accordingly, this claim is not exhausted.

Accordingly, IT IS HEREBY RECOMMENDED that respondent's July 27, 2007, motion to dismiss be denied as to claim one; respondent's motion as to claim 7 be granted.[3]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

---

[3] If these Findings and Recommendations are adopted, petitioner will face a choice of deleting Miranda claims, or seeking to exhaust it. Both options are problematic.

1 that failure to file objections within the specified time may waive the right to appeal the District
2 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: 02/21/08

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

bris2175.mtd