IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KHYLE BRISCOE,

               Petitioner,                     No. CIV S-04-2175 FCD GGH P

      vs.

A.K. SCRIBNER, et al.,

                                ORDER

          Respondent.

_____/

I. <u>Introduction</u>

          Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This action is proceeding on the amended petition filed September 15, 2006.  Petitioner challenges his 1999 conviction for murder, robbery, burglary and the finding that he personally used a firearm in the commission of all three counts.  Petitioner was sentenced to life without the possibility of parole after the jury further found as a special circumstance that count one was committed while petitioner engaged in the commission of robbery and burglary.

\\\\\

\\\\\

\\\\\

1

1    Pending before the court is petitioner's motion for an evidentiary hearing and

2  leave to seek a deposition of an out of state witness, filed February 9, 2009.[1]

3  II.  Background

4    To put the pending motions in context, the court will set forth the factual

5  summary of petitioner's offense contained in the order by the California Court of Appeal.  After

6  independently reviewing the record, the court finds this summary to be accurate and adopts it

7  below:

8    On the night of April 2, 1998,[2] Alisha Rozadilla was alone at the Vacaville home
     of her boyfriend Ben Parovel.  Shaun Pina and [petitioner] knocked on the door,
9    asking for Parovel.  Frightened, Rozadilla armed herself with Parovel's
     nine-millimeter Beretta while she waited for him to return.  When Parovel came
10   home, the two men-acquaintances of his-entered the living room of the house with
     him.  They told Parovel that they wanted to purchase marijuana. They appeared to
11   be unarmed. Parovel-his back to [petitioner] and Pina-took the Beretta from
     Rozadilla and hid it in his clothing.

12

13   Pina and [petitioner] followed Parovel into a bedroom to get the marijuana.  As
     Parovel was weighing out marijuana, Pina pulled out a gun-a .10-millimeter
14   Glock semiautomatic pistol with a red laser beam on it-and relieved Parovel of his
     Beretta.  Pina demanded money.  [Petitioner] returned to the living room where
15   Rozadilla had remained, held a .38-caliber handgun to her neck and asked her "
     'Where's the gun, Bitch?' " in a very loud tone of voice.  When he satisfied
16   himself that she was no longer armed, he asked where to find the money.  She told
     him that she had no idea.  He put her in a headlock-his arm underneath her
17   chin-and walked her back to the bedroom where Parovel and Pina were.  He had
     his gun pointed at her head.

18   In the bedroom, Pina and [petitioner] continued to demand money from Parovel.
     He handed over about $1,500, but Pina wanted more.  Parovel had almost $15,000
19   in cash hidden in the house-money given him in the form of a cashier's check that
     he had recently cashed.  He induced Pina out of the bedroom on the pretext that he
20   would show him where the money was. Parovel tried to run, but Pina grabbed his
     hooded shirt and yanked him back.  He grabbed at Pina's Glock and the two men
21   struggled for it.  The gun fell and flew across the floor.

22   [Petitioner]-hearing the struggle-left Rozadilla in the bedroom and went to
     investigate.  As Parovel struggled to get up and retrieve the Glock, [petitioner]
23   entered the room holding the .38, then picked up the Glock and struck [Parovel] in

24   _____

25    [1] A hearing was held on November 10, 2005, regarding a motion to stay the proceedings
     to exhaust new claims.

26    [2] All dates refer to the 1998 calendar year.

the head repeatedly with it.  The magazine of the Glock fell out while [petitioner] hit Parovel with it.  Pina had Parovel's legs pinned and the three men struggled for several minutes.

Parovel was able to get free of Pina.  The front door was open, so he ran outside with [petitioner] on his back.  Parovel and [petitioner] continued to struggle over the Glock.  [Petitioner] gained control of his .38.  Parovel tripped, bringing [petitioner] down with him. He grabbed for the .38 and the gun went off, shooting at the side of the house.  When Parovel gained control of the .38, he started shooting, afraid for his life.  He believed that Pina still had his Beretta and he was angry that the two men took his money.  [Petitioner] was two feet away from him; Pina was on the driveway 13 or 14 feet away from where Parovel lay on the lawn.

Parovel shot Pina twice; the second shot made Pina drop.[3]  As [petitioner] approached Pina, Parovel fled to a neighbor's house with the .38 to call the police.  Parovel was bleeding from a cut on his head.  He set down the .38 inside the neighbor's house. When he went outside again, [petitioner] and Pina were gone.

Vacaville police responded to a report of a gunshot victim and found Pina lying on the ground, semi-conscious and with a failing pulse.  A wad of money totaling almost $1,400 was removed from his clothing.  No marijuana was found in his pockets and no weapon was seen near the body.  Pina was declared dead at the scene.

Knowing the police were coming, Parovel threw the marijuana, a scale and a magazine for his Beretta out of the house.  He did not touch the Glock.  The .38 he had left at his neighbor's house was later recovered by police.  It contained five empty casings and one live round of ammunition.  Police searched Parovel's house and found a .10-millimeter Glock pistol without a gun magazine and a gun magazine fitting the Glock inside the house.  Two bullets were found, one in the driveway and one on the garage floor.  They also found a scale.

Parovel first told police that [petitioner] and Pina came to the house to play videotape games.  Later, he told police the truth-that he was selling marijuana to them.  He told police that he thought Nate Newman-who shared Pina's apartment-had set him up. Newman had sold him a quarter pound of marijuana for $1,300 earlier that day.  Parovel had heard that Newman had a Glock handgun.

On the night of April 2, [petitioner]-with multiple gunshot wounds-was taken to a hospital.  While lying on a gurney, he told police that he stood on a Vacaville street when an unknown man pulled a gun on him.  [Petitioner] said that he wrestled with the man until he broke away and ran from him.  The man shot at [petitioner] while he was lying on the ground.  [Petitioner] told police that he flagged down a passing vehicle and got a ride to the hospital.  A police officer administered a gunshot residue test.  After a five- to 10-minute interview, [petitioner] was taken into surgery.  The police took his clothing as evidence.  They found no weapons or marijuana on his person.

---

[3] Petitioner was also shot multiple times by Parovel at this time.

On the afternoon of April 4, [petitioner] gave a second statement to police while in the hospital. A nurse advised a police officer that [petitioner] was not under the influence of any medication that would cause him to be unable to answer questions. [Petitioner] seemed alert. They spoke for 20 to 25 minutes and the statement was tape-recorded.

In this statement, [petitioner] admitted that he and Pina went to the Vacaville house of a man named [Parovel] to purchase marijuana. He told police that [Parovel] tried to rob them and that he shot at them. He learned from police that Pina was dead. [Petitioner] admitted that he had been carrying a .38-caliber revolver and that Pina was also armed with a Glock. He tried to tackle [Parovel], who was armed and whom [petitioner] thought intended to kill him. [Parovel] also tried to wrestle Pina's gun from Pina and [petitioner] felt he had to stop [Parovel]. [Petitioner] tried to help Pina, who was hit and collapsed. After the police told [petitioner] that they knew that he and Pina intended to rob [Parovel], [petitioner] admitted that he knew [Parovel] had money.

[Petitioner] also told police that on the night of the shooting, a car was waiting for him containing Newman and another person. These two people brought him to the hospital. Newman had given [petitioner] the .38 and had given Pina the Glock. [Petitioner] said that Newman wanted the robbery to occur that day. Newman was to get a third of whatever [petitioner] and Pina recovered.

[Petitioner] was arrested and ordered held without bail. At the preliminary hearing, he objected to the admission of the April 4 statement that he gave to police as taken in violation of his Miranda[4] rights and as an involuntary statement. The magistrate denied the motion after conducting a suppression hearing. (See § 1538.5.)

On June 1, [petitioner] was charged by information[5] with first degree murder of Pina, robbery of Parovel and Rozadilla, and burglary of Parovel's dwelling. The information alleged that the murder of Shaun Pina was committed in the commission of robbery and burglary and that [petitioner] personally used a firearm in the commission of all three offenses. (See §§ 187, subd. (a), 190.2, subd. (a)(17), 211, 459; see also former §§ 190.2, 12022.5, subd. (a)(1).) [Petitioner] pled not guilty and denied all the enhancement allegations. His motion to dismiss the information and its special circumstances allegations was heard and denied. (See § 995.)

At trial, a forensic pathologist testified that Pina suffered two gunshot wounds. One of the bullets struck vital organs and proved to be fatal. A bullet was recovered from Pina's chest during an autopsy. His blood revealed evidence of marijuana in his system, but no alcohol or other drugs. [Petitioner's] tape-recorded statement to police was played for the jury. A criminalist testified that the bullet found in Pina's chest cavity was fired from [petitioner's] .38-caliber

---

[4] Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

[5] The felony complaint filed April 6 was deemed to be the information by stipulation of the parties.

revolver.  None of the bullets found at the scene came from Pina's .10-millimeter Glock semiautomatic pistol.

[Petitioner's] motion for acquittal of first degree murder based on insufficiency of evidence was denied.  (See § 1118.1.)  The parties stipulated that there was evidence of marijuana in his bloodstream.  [Petitioner] put on expert evidence of his organic brain damage and argued that he lacked the capacity to form the mens rea required for either robbery or burglary.  He also argued to the jury that Parovel's killing of Pina was not done in response to anything that he did.

Ultimately, the jury found [petitioner] guilty of all three offenses and found all three firearm-use-enhancement allegations to be true.  It also concluded that [petitioner] was engaged in the crimes of robbery and burglary during the commission of the murder.  He moved for a new trial, arguing that the trial court misdirected the jury in a matter of law and that the verdict was contrary to the law and the evidence.  He sought a judgment of acquittal notwithstanding the verdict on the murder charge.  (See § 1181, subd. 5.)  The trial court denied the motion for new trial and the related motion for judgment notwithstanding the verdict. [Petitioner] was sentenced to an indeterminate term of life imprisonment without possibility of parole for the murder.  The trial court also imposed a four-year consecutive term for the firearm use enhancement related to the murder charge. Terms for first degree robbery and first degree burglary and the related firearm-use-enhancement findings were stayed on multiple punishment grounds. (See § 654.)

People v. Briscoe, 92 Cal. App. 4th 568, 577-80 (2001), Respondent's Reply, Exh. 12 at 2-6.

Petitioner seeks an evidentiary hearing as to claim 6, 8, 12 and 13[6] of the amended petition.  All claims involve ineffective assistance of trial counsel.  Claim 6 involves the failure of counsel to impeach Parovel and Rozadilla's testimony with police officer witnesses who would have testified to several prior inconsistent statements.  Claim 12 involves trial counsel's failure to impeach Parovel concerning the pistol whipping during the incident and claim 13 concerns trial counsel's failure to present additional evidence regarding Parovel's motive to lie due to an alleged police investigation of his drug dealing.  Petitioner alleges in claim 8 that counsel was ineffective for failing to adequately investigate and properly challenge the admissibility of petitioner's two statements to the police on April 2 and April 4, 1998.  In claim

---

[6] It should be noted that claims 12 and 13 are numbered as claims 13 and 14 in petitioner's amended petition, filed September 15, 2006.  The claims were renumbered as a result of another claim being excised pursuant to the court's October 6, 2008, order.  The court will refer to the claims as 12 and 13 as that is how they are referred to in all the other pleadings.

11 petitioner requests leave to seek a deposition of an out of state witness, Parovel.

III.  Analysis

    Law

        Federal courts may hold evidentiary hearings in habeas actions under certain

prescribed conditions:

> If the applicant has failed to develop the factual basis of a claim in state court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless
> the applicant can show that-
>     (A) the claim relies on-
>         (i) a new rule of constitutional law ...; or
>         (ii) a factual predicate that could not have been previously
>         discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear
> and convincing evidence that but for constitutional error, no reasonable
> factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

        Whether a petitioner failed to develop a claim in state court turns on whether the

petitioner exhibited a lack of diligence or some greater fault in state court.  Williams v. Taylor,

529 U.S. 420, 421, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).  Ordinary diligence requires that

petitioner seek an evidentiary hearing in state court in the manner prescribed by state law.

Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).  Under

California law, an appellate court, when presented with a state habeas petition, determines

whether an evidentiary hearing is warranted only after the parties file formal pleadings, if they

are ordered to do so.  Horton v. Mayle, 408 F.3d 570, 582 n. 6 (9th Cir.2005).  If the state court

denies the petition without ordering formal pleadings, the case never reaches the stage where an

evidentiary hearing must be requested and the petitioner's failure to request a hearing in state

court does not trigger § 2254(e)(2). Id.

        In the instant case, petitioner requested an evidentiary hearing in his state

appellate petition. See Petitioner's Amended Petition (AP), Exh. A.  Because petitioner sought an

evidentiary hearing in state court in the manner prescribed by state law, the court finds that

1   petitioner did not "fail to develop" the facts because he acted diligently in seeking an evidentiary

2   hearing in state court.  See Williams v. Taylor, 529 U.S. at 437, 120 S.Ct. at 1491.

3            Accordingly, although petitioner's habeas petition is governed by the

4   Anti-Terrorism and Effective Death Penalty Act (AEDPA), which limits a district court's

5   discretion in conducting evidentiary hearings and discovery, see 28 U.S.C. § 2254(e)(2), this

6   court assesses the availability of an evidentiary hearing under pre-AEDPA law because petitioner

7   exercised sufficient diligence in seeking to develop the factual basis of his claim in state court.

8   Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

9            "Under pre-AEDPA law, a habeas petition is entitled to an evidentiary hearing

10  [and discovery] on a claim where the facts are in dispute if 1) he has alleged facts that, if proven

11  would entitle him to relief; and 2) he did not receive a full and fair evidentiary hearing in state

12  court."  See Silva v. Calderon, 279 F.3d 825, 853 (9th Cir.2002).

13           "In other words, petitioner must allege a colorable constitutional claim ."  Turner

14  v. Calderon, 281 F.3d 851, 890 (9th Cir.2002).  Nevertheless, the court does not have to hold an

15  evidentiary hearing when the record clearly refutes the collateral factual allegations raised by

16  petitioner.  Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007).

17  Moreover, Schriro also announced that in determining whether to grant an evidentiary hearing

18  the federal court must apply the AEDPA deferential standards to legal and factual questions

19  necessarily reached by the state courts.  Id.

20           A claim of ineffective assistance of counsel is cognizable as a claim of denial of

21  the Sixth Amendment right to counsel, which guarantees not only assistance, but effective

22  assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063

23  (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's

24  conduct so undermined the proper functioning of the adversarial process that the trial cannot be

25  relied upon as having produced a just result.  Id., 104 S. Ct. at 2064.

26  \\\\\

1        First, the defendant must show that counsel's performance was deficient.  This

2  requires showing that counsel made errors so serious that counsel was not functioning as the

3  "counsel" guaranteed by the Sixth Amendment.  Id. at 687, 104 S. Ct. at 2064.   The defendant

4  must show that counsel's representation fell below an objective standard of reasonableness.  Id.

5  at 688, 104 S. Ct. at 2064.  The relevant inquiry is not what defense counsel could have done, but

6  rather whether the choices made by defense counsel were reasonable.  Babbitt v. Calderon, 151

7  F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly

8  deferential, and a court must indulge a strong presumption that counsel's conduct falls within the

9  wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065;

10  Wildman v. Johnson, 261 F.3d 832, 838 (9th Cir. 2001) (finding no deficient performance by

11  counsel who did not retain a ballistics expert on a menacing charge where the same expert had

12  been used in the successful defense of the same defendant on a felon-in-possession charge);

13  Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994); but cf. United States v. Palomba, 31 F.3d

14  1456, 1466 (9th Cir. 1994) (presumption of sound trial strategy not applicable where indicia of

15  tactical reflection by counsel on issue absent from record).  The reasonableness of counsel's

16  decisions may be assessed according to professional norms prevailing at the time of trial.  Silva

17  v. Woodford, 279 F.3d 825, 846 (9th Cir. 2002).

18        Second, the defendant must show that counsel's errors were so serious as to

19  deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687

20  104 S. Ct. at 2064.  The test for prejudice is not outcome-determinative, i.e., defendant need not

21  show that the deficient conduct more likely than not altered the outcome of the case; however, a

22  simple showing that the defense was impaired is also not sufficient.  Id. at 693, 104 S. Ct. at

23  2067-68.  The defendant must show that there is a reasonable probability that, but for counsel's

24  unprofessional errors, the result of the proceeding would have been different; a reasonable

25  probability is a probability sufficient to undermine confidence in the outcome.  Id., 466 U.S. at

26  694, 104 S. Ct. at 2068; see, e.g., Jones v. Wood, 207 F.3d 557, 562-63 (9th Cir. 2000) (failure to

1   investigate and present "other suspect" evidence); Hart v. Gomez, 174 F.3d 1067, 1073 (9th Cir.

2   1999) (failure to introduce evidence that corroborated testimony of a key defense witness whom

3   the jury might otherwise not believe necessarily undermined confidence in the outcome); Brown

4   v. Myers, 137 F.3d 1154, 1157 (9th Cir. 1998) (failure to investigate and present alibi witnesses

5   prejudicial where, without corroborating witnesses, defendant's bare testimony left him without a

6   defense); United States v. Span, 75 F.3d 1383, 1390 (9th Cir. 1996) (failure to request jury

7   instruction prejudicial where reasonable probability defendants would have been acquitted with

8   instruction); Palomba, 31 F.3d at 1465-66 (error that may increase defendant's sentence

9   prejudicial even if reversal would not shorten prospective jail time); Sanders, 21 F.3d at 1461

10  (counsel's failure to interview individual who had confessed to crime and whom three

11  eyewitnesses had identified as culprit prejudicial); Smith v. Ylst, 826 F.2d 872, 875 (9th Cir.

12  1987) (mental incapacity of counsel does not require per se reversal of conviction; defendant has

13  burden to point to specific errors).

14       Provocative Act Murder

15       Though not specifically raised as an issue in the instant motion for an evidentiary

16  hearing[7], it is necessary to discuss the underlying law regarding provocative act murder as it is

17  intertwined with the issues in the instant motion.

18       On direct appeal, the California Court of Appeal held there was sufficient

19  evidence to find petitioner guilty of provocative act murder.

20       As with most criminal offenses, a provocative act murder has both a physical and
     a mental element that the prosecution must establish.  (See § 20.)  To constitute
21   the actus reus of provocative act murder, the defendant must commit an act that
     provokes a third party to fire a fatal shot.  The mens rea element is satisfied if the
22   defendant knows that his or her provocative act has a high probability-not merely
     a foreseeable possibility-of eliciting a life-threatening response from the person
23   who actually fires the fatal bullet.  (In re Aurelio R., supra, 167 Cal.App.3d at p.
     57, 212 Cal.Rptr. 868; see People v. Gallegos, supra, 54 Cal.App.4th at p. 460, 63
24   Cal.Rptr.2d 382; see also In re Joe R., supra, 27 Cal.3d at p. 505, 165 Cal.Rptr.
     837, 612 P.2d 927.)  Cases often discuss these two elements in terms of whether

25

26       [7] The issue is central in the instant habeas petition.

9

the defendant committed a provocative act which proximately caused the killing. (See, e.g., Shamis, supra, 58 Cal.App.4th at p. 846, 68 Cal.Rptr.2d 388; People v. Gallegos, supra, 54 Cal.App.4th at p. 457, 63 Cal.Rptr.2d 382.)

The prosecution must establish that the defendant[8] committed a provocative act. (See People v. Garcia (1999) 69 Cal.App.4th 1324, 1329, 82 Cal.Rptr.2d 254.) In cases in which the underlying crime does not involve an intent to kill-offenses such as robbery[9] and burglary, the underlying crimes that the jury in [petitioner's] case found that he had committed-the mere participation in the underlying criminal offense is not sufficient to invoke the doctrine of provocative act murder. The provocative act must be something beyond that necessary to commit the underlying crime. (People v. Garcia, supra, 69 Cal.App.4th at p. 1329, fn. 3, 82 Cal.Rptr.2d 254; People v. Gallegos, supra, 54 Cal.App.4th at pp. 456-457, 63 Cal.Rptr.2d 382; In re Aurelio R., supra, 167 Cal.App.3d at pp. 59-60, 212 Cal.Rptr. 868; see In re Joe R., supra, 27 Cal.3d at p. 504, 165 Cal.Rptr. 837, 612 P.2d 927.) In every robbery, the possibility exists that a victim will resist and kill. The robber has little control over such a killing once the robbery is undertaken. To impose an additional penalty for the killing improperly discriminates between robbers, not on the basis of any difference in their conduct, but solely on the basis of a victim's response that the robber's conduct induced. (People v. Washington, supra, 62 Cal.2d at p. 781, 44 Cal.Rptr. 442, 402 P.2d 130; People v. Gallegos, supra, 54 Cal.App.4th at p. 457, 63 Cal.Rptr.2d 382.) However, circumstances set in motion by the defendant which are fraught with grave and inherent danger to life are sufficient to constitute a provocative act that allows a jury to raise an inference of malice. (People v. Garcia, supra, 69 Cal.App.4th at pp. 1329-1330, 82 Cal.Rptr.2d 254 [firing weapon into ceiling of occupied room].)

People v. Briscoe, 92 Cal. App. 4th 568, 582-84 (2001).

---

[8] [footnote in opinion] If a provocative act is committed by an accomplice who is later killed by a crime victim, that act cannot form the basis for a provocative act murder. As the accomplice cannot be guilty of murder in connection with his or her own death, so the defendant-who stands in the shoes of the accomplice-cannot be held vicariously responsible for such a killing. (People v. Garcia, supra, 69 Cal.App.4th at pp. 1330-1331, 82 Cal.Rptr.2d 254. [Citations omitted]. The provocative act murder doctrine may also apply if the provocative act was committed by a surviving accomplice. (See In re Joe R., supra, 27 Cal.3d at p. 506 fn. 5, 165 Cal.Rptr. 837, 612 P.2d 927; People v. Garcia, supra, 69 Cal.App.4th at p. 1331, 82 Cal.Rptr.2d 254; Shamis, supra, 58 Cal.App.4th at p. 846, 68 Cal.Rptr.2d 388.) However, as [petitioner's] sole accomplice in this case was the murder victim Pina, we need not consider such cases.

[9] [footnote in opinion] Much of the law of provocative act murder has evolved in robbery cases. (See People v. Gallegos, supra, 54 Cal.App.4th at p. 460, 63 Cal.Rptr.2d 382; see also In re Aurelio R., supra, 167 Cal.App.3d at pp. 59-60, 212 Cal.Rptr. 868.) In robbery cases, courts have consistently required the defendant to commit a provocative act beyond that necessary to commit the robbery in order to be held liable for a killing committed by a third party. (See, e.g., In re Joe R., supra, 27 Cal.3d at p. 506 fn. 6, 165 Cal.Rptr. 837, 612 P.2d 927; People v. Garcia, supra, 69 Cal.App.4th at p. 1331, 82 Cal.Rptr.2d 254.)

* * *

[Petitioner] argues that the only proper evidence we may consider on the issue of when Parovel was motivated to use lethal force is the direct evidence provided by Parovel's own testimony.  The fact that the California Supreme Court needed only a robbery victim's testimony to establish the sequence of events for purposes of determining causation in a provocative act murder case does not compel the conclusion that this is the only evidence that a court may consider to make this determination.  (See, e.g., In re Joe R., supra, 27 Cal.3d at pp. 506-508, 165 Cal.Rptr. 837, 612 P.2d 927.)  We need not limit ourselves to Parovel's testimony alone when considering whether substantial evidence supports the jury's implied finding that [petitioner] committed a provocative act that in turn prompted Parovel to kill Pina.  We may, of course, consider circumstantial evidence and reasonable inferences that may be drawn from the evidence presented to the jury, as well as direct evidence.  (See People v. Anderson (1940) 37 Cal.App.2d 615, 619, 100 P.2d 348 [circumstantial evidence]; see also People v. Ceja (1993) 4 Cal.4th 1134, 1138-1139, 17 Cal.Rptr.2d 375, 847 P.2d 55.)

On appeal, [petitioner] contends that his pistol-whipping of Parovel cannot constitute a provocative act because Parovel's fear for his life arose before the pistol-whipping occurred-when Pina took his weapon while the two men were still in the bedroom. [Petitioner] reasons that Pina's earlier act of relieving Parovel of his weapon while the two men were still inside Parovel's house was the act that provoked Parovel to commit the lethal act-not his subsequent pistol-whipping. The provocative act murder doctrine requires that the perpetrator of a crime intentionally commit an act that is likely to result in death and that prompts the crime victim to kill in response to that conduct.  (People v. Gilbert, supra, 63 Cal.2d at pp. 704-705, 47 Cal.Rptr. 909, 408 P.2d 365; see People v. Cervantes, supra, 26 Cal.4th at p. 874, 111 Cal.Rptr.2d 148, 29 P.3d 225.) [Petitioner] argues that there is insufficient evidence to support the conclusion that his conduct led Parovel to fear, prompting him to kill.

This argument is flawed, for several reasons.  First, the record does not support [petitioner's] claim that Parovel testified that "immediately after being stripped of his gun by Pina, he began to fear for his life."  At trial, Parovel testified that he was fearful while he was in the bedroom.  He told the jury that Pina took his weapon while they were in the bedroom.  However, he did not offer specific testimony-as [petitioner] seems to suggest-that the loss of his weapon caused him to immediately fear for his life.  Parovel testified that when he opened the front door of his house, he was trying to get away from Pina and [petitioner] because he feared them.  Until this point, Parovel's fear is generalized.  It is only after [petitioner] pistol-whipped him that Parovel's fear rose to the level of a mortal fear.  After being pistol-whipped and regaining control of a weapon, Parovel began to shoot because he was in fear for his life.  Thus, the record supports the conclusion that the fear that prompted his lethal act arose as a result of [petitioner's] pistol-whipping.  These facts allow a jury to properly conclude that [petitioner's] conduct was an intentional act that was likely to result in death and that prompted Parovel to kill in response.  (See People v. Gilbert, supra, 63 Cal.2d at pp. 704-705, 47 Cal.Rptr. 909, 408 P.2d 365.)

Even if [petitioner] accurately summarized the factual sequence of events, his

11

argument fails because it incorrectly assumes only one possible cause for Parovel's lethal act.  Case law establishes that there may be more than one cause prompting an act of lethal resistance-that is, more than one provocative act.  (See People v. Caldwell, supra, 36 Cal.3d at p. 219, 203 Cal.Rptr. 433, 681 P.2d 274; Shamis, supra, 58 Cal.App.4th at p. 846, 68 Cal.Rptr.2d 388; see also In re Joe R., supra, 27 Cal.3d at pp. 507-508, 165 Cal.Rptr. 837, 612 P.2d 927; People v. Kainzrants, supra, 45 Cal.App.4th at pp. 1077-1078, 53 Cal.Rptr.2d 207.)  The fact that Pina's taking of Parovel's weapon could have been one cause of Parovel's ultimate act of shooting Pina does not preclude the possibility that the later pistol-whipping administered by [petitioner] himself was yet another provocative act resulting in Parovel's shooting of Pina.

[Petitioner's] argument also defies common sense because it assumes that if a relatively minor provocative act occurs causing the victim to be placed in fear, a later and more egregious act may not be considered as a provocative act that caused the victim's subsequent lethal act.  We find no support in the case law for such a proposition.  Later acts that do not actually provoke lethal resistance are not properly considered provocative acts, but cases that hold this are not also authority for the different proposition that later acts escalating a victim's fear and increasing the desire to resist also cannot be a proximate cause of the lethal act.  (See People v. White, supra, 35 Cal.App.4th at p. 766, 41 Cal.Rptr.2d 510 [second act provokes response although first act does not]; see also In re Joe R., supra, 27 Cal.3d at p. 507, 165 Cal.Rptr. 837, 612 P.2d 927 [victim testified that he barely noticed later punch].)  Logic suggests that while losing one's weapon may make one uneasy about one's safety, being repeatedly beaten about the head with a pistol would likely escalate that uneasiness into a fear that might prompt a lethal response at the first available opportunity.

A pistol-whipping is also more likely than the simple act of relieving a victim of his or her own weapon to satisfy the requirement that a provocative act be a malicious act taken in conscious disregard for life.  (See In re Joe R., supra, 27 Cal.3d at p. 507, 165 Cal.Rptr. 837, 612 P.2d 927 [life-threatening act required].)  In our case, [petitioner's] pistol-whipping was also closer in time to the lethal act than the initial loss of Parovel's weapon.  The pistol-whipping occurred immediately before Parovel's shooting of Pina.  This suggests that [petitioner's] later act was more likely to have prompted the immediate response leading to Pina's death.  Parovel himself testified that he feared for his life when he was on the front lawn of his house.  Once he gained control of a weapon after being pistol-whipped, he started shooting because he was in fear of his life.  This evidence satisfies us that there is substantial evidence to support the jury's implied conclusion that [petitioner's] life-threatening conduct provoked Parovel to commit a lethal act.

[Petitioner] also argues that his act of pistol-whipping Parovel could not constitute a provocative act because it was not an act beyond that inherent in the underlying crime of robbery itself.  A provocative act must be one that goes beyond conduct that is inherent in the underlying felony.  (People v. White, supra, 35 Cal.App.4th at p. 765, 41 Cal.Rptr.2d 510.)  In a provocative act murder case, we review whether the defendant committed an act in furtherance of the underlying crime that was life-threatening and that went beyond those acts necessary to accomplish the underlying offense.  (Ibid. [robbery case].)  It has long been established in

provocative act murder cases that when the underlying offense is robbery, any conduct beyond that essential to the commission of the robbery may be a provocative act. Typically, robbery involves an oral or visual demand for money. A physical assault on the victim or an actual discharge of a weapon is not an element of the offense, but is an act beyond that necessary to complete a robbery. The beating of a robbery victim with a deadly weapon can constitute a provocative act if it was a life-threatening act. (People v. White, supra, 35 Cal.App.4th at pp. 766, 768, 41 Cal.Rptr.2d 510 [beating with baseball bat]; see People v. Gallegos, supra, 54 Cal.App.4th at p. 461, 63 Cal.Rptr.2d 382.) We are convinced that [petitioner's] act of pistol-whipping Parovel could likewise be a provocative act beyond that inherent in the crime of robbery alone. Thus, we are satisfied that substantial evidence supports the jury's finding of a provocative act sufficient to satisfy the provocative act murder doctrine.

[Petitioner] also contends that his handling of Rozadilla did not constitute a provocative act. He argues that there was no evidence that [petitioner] verbally threatened Parovel or that Parovel was sufficiently aware of [petitioner's] conduct toward Rozadilla such that those acts might provoke Parovel to a lethal response. We find to the contrary, that his actions were an implied threat to harm Rozadilla if Parovel did not cooperate with [petitioner] and Pina. [Petitioner] placed Rozadilla in a headlock, pressed a gun to her head and took her into the bedroom where Parovel was. He held her in this manner while he and Pina demanded money of Parovel. Clearly, [petitioner] used Rozadilla-then Parovel's girlfriend-as an implied hostage. A jury could properly find that he committed a provocative act when [petitioner] pointed a weapon to Rozadilla's head and demanded that Parovel acquiesce to his demands. In so doing, he dramatically increased the risk to Rozadilla of injury or death by the manner in which he held her in a headlock and by the proximity of the weapon to her head. (See People v. Kainzrants, supra, 45 Cal.App.4th at p. 1077, 53 Cal.Rptr.2d 207.) Thus, the jury had substantial evidence to support a finding that [petitioner] committed not one, but two provocative acts.

People v. Briscoe, 92 Cal. App. 4th 568, 585-88 (2001)

Discussion

Claim Six

Petitioner contends that trial counsel failed to impeach Parovel and Rozadilla with several prior inconsistent statements that they made to police following the shooting. Petitioner describes four[10] different inconsistences that counsel failed to utilize during trial.

A. Counsel failed to impeach Parovel and Rozadilla about the changing and inconsistent stories they provided to different police officers.

---

[10] Petitioner describes five claims but one claim will be discussed later as it is essentially the same as claim 12.

B.  Counsel failed to impeach Parovel with statements he made to the police that Pina was unarmed when Parovel shot him.

C.  Counsel failed to impeach Rozadilla with prior statements that the lighting was bad and she could not identify the robbers.

D.  Counsel failed to competently cross examine and re-call Parovel to question him regarding his drug dealing.

However, it is important to note, that in direct and cross examination, Parovel admitted to lying to the police to cover up his marijuana selling and attempting to conceal evidence.  Reporter's Transcript (RT) at 118-19, 132, 143.  In addition, petitioner provided a recorded statement to police that was played before the jury.  Petitioner's admission corroborates much of Parovel and Rozadilla's testimony.  Petitioner admits to taking part in the robbery, holding the .38 to Rozadilla's head, pistol whipping Parovel and tackling Parovel to prevent him from obtaining one of the guns.  Clerk's Transcript (CT) at  86-117.  It seems that trial counsel made a tactical decision not to spend a great deal of time impeaching the witnesses on prior inconsistent statements after the witnesses admitted to lying and petitioner confessed in detail to his involvement.  Trial counsel's strategy focused on demonstrating that petitioner's treatment of Rozadilla and the pistol whipping of Parovel were not provocative acts to support a murder charge and that petitioner has a brain dysfunction that prevented him from forming the requisite mental states for murder, robbery and burglary.  RT at 489-504.

A.  Impeachment Re Inconsistent Stories

Petitioner first argues that trial counsel erred by not presenting evidence and witnesses to impeach Parovel and Rozadilla regarding inconsistent and changing stories they initially provided to the police.  As the jury was aware of the lies from the direct and cross examination, it is unclear what trial counsel could have accomplished by presenting extrinsic evidence to show the deceit.  Petitioner does not describe how impeaching Parovel's testimony with more specific details of his lies would have more likely than not, altered the outcome of the trial.

14

1    The jury heard testimony that Parovel initially lied to police.  Trial counsel

2    addressed Parovel's lies in closing.  RT at 496.   Even the prosecution referred to Parovel as a

3    drug dealer in closing argument.  RT at 459, 464.   In addition, the jury heard petitioner's

4    recorded statement that corroborated the victims' testimony.  Trial counsel's decision appears

5    reasonable under the circumstances.  Pursuant to <u>Strickland</u>, petitioner must show that trial

6    counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

7    reliable.  <u>Strickland</u>, 466 U.S. at 687 104 S. Ct. at 2064.  Petitioner has not set forth a sufficient

8    argument to show that trial counsel's failure to impeach the witnesses resulted in an unfair trial.

9    Petitioner is not entitled to an evidentiary hearing.

10    B.  <u>Impeachment Re Unarmed Pina</u>

11    Petitioner next argues that Parovel provided conflicting accounts regarding if Pina

12    was armed when Parovel shot him and trial counsel was ineffective for failing to impeach

13    Parovel.  The essential issue of this claim is testimony concerning Parovel's Beretta firearm and

14    its whereabouts during the robbery.  Petitioner seems to argue that the whereabouts of the Beretta

15    are vital to determine if Parovel was justified in shooting Pina and Petitioner.

16    At trial, Parovel testified that he handed the Beretta to Pina, who put it in his

17    pocket.  RT at 102-103.  When Parovel shot Pina, Parovel believed that Pina still had the Beretta

18    on his person.  RT at 139.  It is important to note that Parovel also testified at trial that he did not

19    see Pina holding the Beretta when he shot him.  RT at 139.  Petitioner argues that trial counsel

20    was ineffective for failing to impeach Parovel regarding his belief that Pina was armed.

21    Petitioner contends that counsel should have impeached Parovel's testimony with

22    the admitted fake statement he provided to police immediately after the shooting.  Parovel falsely

23    stated that when he entered the house with petitioner and Pina, he saw the Beretta lying in plain

24    view.  AP, Exh. H.  Parovel said that during the struggle inside the house he observed that the

25    Beretta was no longer on the bed and petitioner appeared to be holding two guns.  <u>Id</u>.  Petitioner

26    believes that according to these statements, Parovel could not have had a good faith belief that

1   Pina was armed with the Beretta, when Parovel shot him.

2              As stated above, Parovel testified at trial that he initially lied to police.  RT at 118-
3   19.  The statement to the police occurred just after the incident.  Had counsel impeached Parovel
4   with this statement, it is more than likely that he would have replied that he was lying to the
5   police, which would have been consistent with his other testimony.  In addition, trial counsel
6   addressed Parovel's lies surrounding the incident in closing arguments.  RT at 496.  Most
7   importantly, petitioner admitted in his statement that was played to the jury that Parovel had the
8   Beretta on him and then relinquished the Beretta to them during the robbery.[11]  Petitioner has not
9   stated what would have been gained by impeaching Parovel.

10             While Parovel gave differing accounts of how he lost control of the Beretta, it
11  remains clear that petitioner and Pina each had a firearm and one of them had the Beretta, when
12  the three men were struggling for control of Pina's Glock.  By the time Parovel ran outside and
13  obtained control over the .38, he did not know the exact locations of the other guns or who was
14  holding them.  Parovel testified that he did not see Pina holding a firearm, but he believed Pina
15  had the Beretta.

16             Petitioner has failed to demonstrate the trial counsel was ineffective for failing to
17  attempt to impeach Parovel's belief that Pina was armed.  Petitioner's argument is far too
18  convoluted for trial counsel to be found ineffective, let alone for a finding that petitioner was
19  deprived of a fair trial as a result.  Petitioner is not entitled to an evidentiary hearing on this
20  claim.

21             C.  Impeachment Re Bad Lighting

22             Petitioner next argues that counsel failed to impeach Rozadilla based on her
23  failure to identify petitioner in a photographic lineup and her statement that the house was dark
24  during the incident.  Petitioner suggests that impeaching Rozadilla with these facts would have

25  ───────────────
26       [11] In his admission to the police, petitioner stated that Parovel gave the gun to him.  This
     contradicts Parovel's testimony that he gave the gun to Pina.

1  cast doubt upon her testimony.  However, petitioner's admission to the police corroborates

2  Rozadilla's testimony and places petitioner at the scene of the crime, lessening the importance of

3  Rozadilla's failed identification.  It appears that trial counsel made a tactical decision not to press

4  Rozadilla regarding her initial lies to the police.  A tactical decision by counsel with which the

5  defendant later disagrees is not a basis for a claim of ineffective assistance of counsel.  Guam v.

6  Santos, 741 F.2d 1167, 1169 (9th Cir.1984).  Trial counsel may have considered it imprudent to

7  impeach Rozadilla who petitioner admitted to putting in a headlock and then putting a gun to her

8  head.  It would be likely that the jury would have sympathy for this victim and would not

9  appreciate trial counsel going to great lengths to impeach her testimony.  This decision is

10  reasonable based upon a review of the record.  Petitioner has not set forth facts that if proven

11  would entitle him to relief.

12            D.  Cross-Examination

13            Finally, petitioner alleges that trial counsel was ineffective for failing to lay a

14  proper foundation while cross examining Parovel and for neglecting to request that Parovel be

15  available for re-call.  Trial counsel intended to call a defense investigator to describe Parovel's

16  drug selling and how the incident was a "drug rip off."  RT at 259.  The trial court did not allow

17  the defense investigator to testify due to the lack of an adequate foundation.  RT at 260-262.

18  Trial counsel then attempted to call Detective Hamers to impeach Parovel's testimony

19  concerning the extent of his drug dealing.[12]  RT at 261-262.  The trial court denied this request as

20  well, but suggested that counsel re-call Parovel and impeach him to lay the proper foundation.

21  RT at 277.  Trial counsel attempted to re-call Parovel, but he was unavailable as trial counsel had

22  failed to request that the prosecutor make Parovel available for further testimony.  Petitioner now

23  argues that trial counsel was ineffective for failing to properly impeach Parovel and for failing to

24  request that Parovel be subject to recall.  The California Court of Appeal addressed part of

25

26            [12] Parovel admitted to Detective Hamers that he sold drugs.

petitioner's instant argument.

Next, [petitioner] argues that on three occasions the trial court deprived him of a meaningful opportunity to present a complete defense in violation of his constitutional rights.  (See U.S. Const., 6th & 14th Amends.)  On cross-examination, Parovel denied that he sold drugs and denied telling Detective Michael Hammers-the investigating officer of the shooting case-that he did.  Almost immediately afterwards, Parovel admitted that he had sold some marijuana.

Later, defense counsel asked outside the presence of the jury to call Detective Hamers to impeach Parovel's testimony that he did not sell drugs.  Detective Hamers told the trial court that Parovel had admitted to him that he sold marijuana and that Nate Newman was one of his suppliers. [Petitioner] argued that this was proper impeachment of Parovel, who denied selling drugs.  The trial court, the prosecutor and defense counsel tried to reconstruct exactly what Parovel testified to about sales of marijuana, prompting the trial court to obtain a transcript of Parovel's cross examination.  The trial court concluded that Parovel's testimony was that he occasionally sold marijuana, because he first denied and then admitted selling marijuana.  Thus, the trial court suggested that Detective Hamers's testimony might not be strictly inconsistent with Parovel's testimony.  The prosecutor argued that whether Parovel purchased marijuana from Newman was a collateral matter and that the jury already knew that Parovel was not a law-abiding citizen.

Ultimately, the trial court concluded that the testimony [petitioner's] attorney had elicited from Parovel was not specific enough to be inconsistent with the testimony Detective Hamers could offer.  The proffered evidence was not proper impeachment, the trial court ruled, and even if it was, these were collateral matters.  Applying section 352 of the Evidence Code, the trial court ruled that the evidence would be more prejudicial and time-consuming than probative.  It also saw no prejudice to [petitioner] from its ruling because the jury already knew that Parovel was not living an upstanding life-he had sold drugs and destroyed evidence.  It indicated that defense counsel could recall Parovel on this issue, but would not permit the impeachment that [petitioner] proposed based on the testimony that Parovel had given until that time.[13]

On appeal, [petitioner] contends that the trial court improperly precluded him from presenting evidence of Parovel's prior inconsistent statement to Detective Michael Hamers about whether Parovel had admitted to the detective that he was a drug dealer.  A witness's inconsistent statement is admissible in evidence to assist the jury in determining his or her credibility.  (Evid. Code § 780, subd. (H).)  The trial court concluded that the proffered statement was not inconsistent with Parovel's earlier testimony.  Whether or not the statement *was* inconsistent, the court found that the evidence was more prejudicial than probative.  A trial court may exclude otherwise admissible evidence if its probative value is substantially

---

[13] It appears that Parovel was then preparing to leave the jurisdiction, having completed his testimony. [Petitioner] had not asked that he remain available for additional questions when he had completed his questioning of Parovel.

outweighed by its prejudicial effect-undue consumption of time, danger of undue prejudice, confusion of issues or misleading the jury. (Evid. Code § 352.) Its exercise of its discretion pursuant to Evidence Code section 352 will not be reversed on appeal, absent a showing of an abuse of that discretion. (*People v. O'Brien* (1976) 61 Cal.App.3d 766, 781.) Such as abuse of discretion occurs if the trial court's ruling falls outside the bounds of reason. (*People v. DeSantis* (1992) 2 Cal.4 th 1198, 1226, cert. Den. 508 U.S. 917.) Here, the trial court found that the proffered evidence would be more prejudicial and time-consuming than probative. The evidence might have misled the jurors to believe that the fact that Parovel was a drug dealer would constitute a defense to the charged crimes. It was also of slight probative value, as it was cumulative of evidence that the jury already had heard that Parovel had sold drugs on several occasions. For these reasons, we are satisfied that the trial court's decision did not fall outside the bounds of reason and that, thus, the trial court did not abuse its discretion in excluding this evidence.

Respondent's Reply, Exh. 12 at 38-40.

Even if a proper foundation had been laid and even if Parovel had been subject to recall, the trial court held that petitioner's proffered testimony could not be entered into evidence as it was more prejudicial than probative. The court of appeal upheld the trial court's ruling and noted the slight probative value based on the testimony already in evidence that Parovel sold drugs.

Pursuant to Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007), the federal court must apply the AEDPA deferential standards to legal and factual questions necessarily reached by the state courts in determining whether to grant an evidentiary hearing. Id. Petitioner has failed to demonstrate that the state court decision is contrary to federal law. While trial counsel may have been deficient, the conduct did not affect the outcome of the trial. Had trial counsel properly attempted to admit the evidence, the court would not have allowed it. Petitioner has failed to show any prejudice, i.e. any drug selling evidence that trial counsel should have presented was already known to the jury. Furthermore, the integrity of Parovel as a witness was not the crux of trial counsel's defense as petitioner's own admission corroborated the majority of Parovel's testimony. An evidentiary hearing need not be held when the record clearly refutes the collateral factual allegations raised by petitioner. Schriro, 550 U.S. 465, 127 S.Ct. 1933, 1940.

19

Claims 12 & 13

1    The court will next address claims 12 and 13 as they are intricately related to
claim 6 above.  In claim 12, petitioner alleges that trial counsel was ineffective for failing to
investigate and impeach Parovel regarding a statement he made that it was Pina, not petitioner,
who pistol whipped him during the incident.

Immediately following the incident, Parovel told police that Pina had pistol
whipped him.  AP, Exh. Q at 965.   However, at trial Parovel testified that petitioner pistol
whipped him.  RT at 106.  In his admission to the police, petitioner also admitted to hitting
Parovel in the head with the gun.  CT at 111.  The pistol whipping was one of the provocative
acts to support the murder conviction.

Petitioner now theorizes that while attempting to pistol whip Parovel, petitioner
was actually hitting Pina by mistake.  AP at 123.  Petitioner relies on the autopsy report that
shows Pina had blunt force injury to the face including an orbital bone fracture.  AP, Exh. L at 3.
Petitioner contends that Parovel only had minor injuries to his face following the incident.  AP,
Exh. N, O.  Petitioner also notes that it was dark in the house and Pina and Parovel were
struggling so petitioner could have mistakenly hit the wrong person.

Petitioner's theory and argument is tenuous at best and petitioner has failed to
show that trial counsel was deficient.  It is not clear what would have been gained by impeaching
Parovel, when petitioner admitted to pistol whipping him in his admission to police.  Petitioner
admittedly was trying to pistol whip Parovel and this was not the only action that qualified as a
provocative act, as petitioner admitted to holding Rozadilla in a head lock with a gun to her head.
Whether petitioner accidently hit his co-defendant is not pertinent.  Trial counsel's strategy
focused on petitioner's alleged brain dysfunction and that there were insufficient provocative
acts.  RT 489-504.  A tactical decision by counsel with which the defendant later disagrees is not
a basis for a claim of ineffective assistance of counsel.  Guam v. Santos, 741 F.2d 1167, 1169
(9th Cir. 1984).

1          It is important to note that trial counsel did address the pistol whipping in detail

2   and emphasized the minor injuries to Parovel's face in her attempt to show that the pistol

3   whipping was not a provocative act.  RT at 490-91, 500.  However, the jury was not convinced

4   by this argument.  Even if petitioner could show that trial counsel's performance was deficient,

5   petitioner has failed to show any prejudice as a result.  Petitioner's theory involves too much

6   speculation and trial counsel made similar arguments to no avail.  Petitioner is not entitled to an

7   evidentiary hearing.

8          In claim 13, petitioner alleges that trial counsel was ineffective for failing to

9   adequately investigate and present evidence regarding Parovel's drug dealing and an alleged

10  investigation of Parovel by the police.  Petitioner contends that there must have been a deal

11  between Parovel and the district attorney's office for Parovel to testify and not be investigated

12  and prosecuted for the marijuana in his house.  Petitioner supports this arguments by citing the

13  existence of a laboratory report confirming that the substance in Parovel's house was marijuana

14  and that Parovel admitted to selling marijuana.  Petitioner concludes that the investigation was

15  stopped in return for Parovel's testimony.

16         Petitioner relies on speculation and cites no evidence that there was an agreement

17  between Parovel and the district attorney's office.  Petitioner has not shown that the existence of

18  a laboratory report confirming the existence of marijuana in Parovel's house means the police

19  were conducting an investigation for drug sales that conveniently ended.  That trial counsel did

20  not investigate this theory or place the laboratory report in evidence is not ineffective assistance

21  of counsel, considering Parovel admitted the substance was marijuana.  As stated in claim 6,

22  there was ample evidence of Parovel's drug dealing from direct and cross examination and

23  additional evidence was denied by the trial court as being more prejudicial than probative.

24         Petitioner's argument relies on too much speculation to support a finding of

25  ineffective assistance of counsel.  Trial counsel was not ineffective for failing to present an

26  argument that had no evidentiary support.  Petitioner cannot show that he was deprived of a fair

1   trial, thus this claim is denied.

2           Claim 8

3           Petitioner also alleges ineffective assistance of counsel regarding the admission of

4   two statements he made to the police on April 2 and April 4, 1998.  Petitioner arrived at the

5   hospital on the evening of April 2, 1998, with gunshot wounds.  At that time, police officers

6   questioned petitioner about the events that led to his gunshot wounds, prior to him being

7   admitted for surgery.  Petitioner was not given Miranda warnings at that time.  On April 4, 1998,

8   after being Mirandized, petitioner provided a detailed statement to police that was recorded.

9           April 2nd Statement

10          Petitioner seeks an evidentiary hearing due to trial counsel using the incorrect

11  statutory procedure for litigating the admissibility of the April 2 statement.  Petitioner argues that

12  he was in custody when he spoke to police on April 2, and counsel was ineffective for failing to

13  request a proper suppression hearing outside the presence of the jury.  The court of appeal held

14  that the trial court properly allowed the April 2 statement into evidence.

15          [Petitioner] also asserts that the trial court erred by admitting two statements he
            made to police officers and by instructing the jury about the admissions contained
16          in those statements.  First, he argues that the trial court failed to conduct a
            foundational hearing to adjudicate preliminary facts implicated by his objection to
17          the admission of his preoperative statement given to police on April 2.  (See Evid.
            Code §§402, 405.)  Before going into surgery for his gunshot wounds, [petitioner]
18          told Fairfield Police Officer Richard Williams that an unknown gunman drew a
            weapon on him, wrestled with him for that gun and ran away.  He said that the
19          stranger shot at him while he lay on the ground.  Two days later, he gave police a
            different statement about what happened that night. [Petitioner] twice challenged
20          the April 4 statement to police before trial, but did not move to suppress the April
            2 statement.

21
            At trial, Office Williams was questioned about [petitioner's] April 2 statement.
22          When the prosecutor asked if [petitioner] told him how he came to be injured,
            defense counsel objected that the question called for a hearsay response and that
23          the statement was both taken in violation of *Miranda* and was involuntary.  The
            trial court overruled the objection.  The prosecution then brought before the jury
24          evidence of the substance of [petitioner's] April 2 statement.  On cross-
            examination, defense counsel brought out evidence pertaining to [petitioner's]
25          competence to speak to police before surgery.  She also asked Officer Williams
            whether [petitioner] was advised of his *Miranda* rights before the statement was
26          taken.  He admitted that [petitioner] was not so advised before the prosecutor had

                                               22

an opportunity to object that [petitioner] was not in custody at the time of the statement.  The trial court agreed, concluded that the question was irrelevant, and instructed the jurors to disregard both the question and the reply.  Finally, Officer Williams testified that the April 2 statement was not tape-recorded.

During argument, the prosecution urged the jury to conclude that this statement-which was inconsistent with his April 4 statement-evidenced a consciousness of guilt on [petitioner's] part.  The jury was instructed that if it concluded that [petitioner] made a willfully false statement, it could use that fact to raise an inference of a consciousness of guilt.  (CALJIC No. 2.03.)

On appeal, [petitioner] argues that once defense counsel objected to the prosecution's questioning of Officer Williams about his April 2 statement, the trial court had a procedural duty to conduct a foundational hearing to determine the preliminary facts about voluntariness and any violation of *Miranda*.  (See Evid. Code §§402, 405.)  Its failure to conduct this hearing outside the presence of the jury was prejudicial federal constitutional error, he reasons, and implicated his due process rights to a fair trial.  By statute, a criminal defendant may have issues of preliminary fact bearing on the admissibility of evidence determined outside the presence of the jury, on request.  (Evid. Code, §402, subd. (B); see Evid. Code, § 400.) [Petitioner] did not seek such a hearing.  Thus he did not trigger the application of the procedure set forth in section 402 of the Evidence Code.

When the existence of a preliminary fact is disputed and that preliminary fact is also a fact in issue in the trial, the jury must not be informed of the court's determination about the existence or nonexistence of the preliminary fact.  (Evid. Code, §405, subd. (a), (b)(1).)  Some cases have held that even if no request for a hearing is made, this statute mandates that the trial court conduct an in camera hearing when a criminal defendant challenges the voluntariness of a confession or challenges a statement as taken in violation of *Miranda*.  (See, e.g., *People v. Torrez* 1987) 188 Cal.App.3d 723, 730-731 [voluntariness, *Miranda* issues to be determined pursuant to Evid. Code, § 405].)  If the trial court fails to hold a hearing outside the presence of the jury, we must determine whether the trial court abused its discretion in holding its hearing in the presence of the jury.  (*People v. Torrez*, supra, 188 Cal.App.3d at p. 733.)

In our case, unlike *Torrez*, no extended discussion of the legal issues occurred in the jury's presence.  The objections were clearly meritless and the trial court disposed of them without undue emphasis.  He had no *Miranda* rights at this stage of the case, because he was only a suspect and was not then in custody.  (*See Miranda v. Arizona, supra*, 384 U.S. at p. 444; *People v. Mickey* (1991) 54 Cal.3d 612, 648 cert. den. 506 U.S. 819.)  In like manner, [petitioner's] statement was clearly voluntary.  He was conscious and able to speak with the officer.  He had not been treated at the time that Officer Williams questioned him, so there was no risk that he was under the influence of medication.  He gave a coherent explanation of how he came to be shot.  All of these factors suggest that [petitioner] gave a voluntary statement to police on April 2; there was no evidence to the contrary.  The statement was clearly unobjectionable on the ground asserted.  If a hearing had been conducted outside the presence of the jury, the same evidence would have been given to the jury at its conclusion.  Thus, we conclude that the trial court did not abuse its discretion in failing to conduct a

1    hearing on the admissibility of this statement outside the presence of the jury.

2    Respondent's Reply, Exh. 12 at 30-32.

3    Petitioner argues that trial counsel should have requested a hearing outside the

4    presence of the jury to present evidence that petitioner was in custody at the time he spoke to

5    police.  Petitioner alleges that he was not free to leave at the time the police were questioning

6    him, thus it was a custodial interrogation.  Petitioner may not have been free to go, but such

7    "custody" was a result of an impending, life saving surgery.  Petitioner presents no facts

8    suggesting that police had imposed any restraint on him.  Petitioner also contends that trial

9    counsel was ineffective by objecting in front of the jury and having the objection overruled and

10   characterized as irrelevant by the trial court.

11   However, petitioner has failed to demonstrate that trial counsel's conduct was

12   ineffective under Strickland.  Even if trial counsel was deficient, petitioner was not prejudiced by

13   the conduct.  The court of appeal held that the statement was properly admitted into evidence.

14   Had there been a hearing without the jury, the trial court would still have admitted the statement

15   into evidence and would have been correct in its ruling.  Nor has petitioner demonstrated any

16   prejudice from the jury hearing the objection and trial court's ruling.  In determining whether to

17   grant an evidentiary hearing the federal court must apply the AEDPA deferential standards to

18   legal and factual questions necessarily reached by the state courts.  Schriro v. Landrigan, 550

19   U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007).  The court of appeal's holding is not

20   contrary to established federal law.

21                      April 4th Statement

22   Petitioner alleges that trial counsel was ineffective for failing to present evidence

23   of medication that petitioner was taking and for using the incorrect statutory procedure to

24   challenge the admissibility of the April 4 statement.  The court of appeal held the trial court did

25   not err in admitting the April 4 statement into evidence.

26   \\\\\

[Petitioner] also challenges the admission of his April 4 postoperative statement to police on various grounds. First, he argues that the trial court erred by determining the admissibility of this statement under the procedure set out in section 1538.5. (See § 1538.5.) He contends that this procedure allowed the trial court to improperly consider irrelevant and hearsay evidence in violation of his constitutional rights by impressibly shifting the burden of production evidence and burden of persuasion.

At the preliminary hearing, [petitioner] objected to the admission of the April 4 postoperative statement on *Miranda* and involuntariness grounds. (See U.S. Consti., 5th & 14th Amends.) The magistrate deemed the objection to be a motion to suppress and conducted a hearing on the admissibility of the statement. [Petitioner] was permitted to inquire about [petitioner's] level of awareness at the time that the statement was given. A police officer testified that [petitioner] seemed alert and calm. A nurse said that [petitioner] was not taking any medications that would cause him to have difficulty answering questions intelligently. The officer testified that he read [petitioner] his *Miranda* rights from a printed card. When the questioning was complete, the magistrate heard the tape recording of the statement. After the hearing, the magistrate denied the motion finding that [petitioner] was advised of and waived his rights and that this statement was voluntary. (See § 1538.5.)

[Petitioner] renewed his motion to suppress this statement on the same grounds before trial. The same judge who sat as magistrate at the preliminary hearing heard the renewed motion. Defense counsel agree that the proper procedure as outlined in subdivision (I) of section 1538.5 was to limit the evidence that was considered on the renewed motion to that offered at the preliminary hearing, but the trial court ultimately allowed the defense to offer further testimony in support of the motion. The defense asserted that [petitioner] was under the influence of self-medicated pain medication-morphine, which can make a person sleepy-at the time he made his statement. The trial court denied this motion finding no reason to change its earlier ruling, which it adopted in its entirety.

Respondent's Reply, Exh. 12 at 32-33.

Petitioner's argument lacks merit. There were two separate hearings regarding admission of the statement and trial counsel presented additional evidence at the later hearing regarding the morphine. Despite the morphine evidence, the trial court still allowed the statement into evidence. Petitioner has failed to describe how trial counsel was deficient in presenting the morphine evidence.

Petitioner also faults trial counsel for not presenting evidence regarding the side effects of the drug, Versed, that petitioner was administered. Petitioner describes Versed as a sedative/hypnotic drug with an amnesiac effect. Other than this brief description, petitioner has

1   not presented sufficient evidence that the effects of the drug should lead to suppression of the

2   statement or even that trial counsel was ineffective for failing to raise the issue.  Petitioner has

3   not provided a declaration with any information or any evidence from an expert.[14]  The court of

4   appeal noted that a nurse stated that petitioner was not given any medication that would cause

5   him difficulty in answering questions.  Petitioner has not demonstrated that trial counsel was

6   ineffective in her attempts to suppress the statement.

7           With respect to the statutory procedures used to adjudicate the motion, the court

8   of appeal stated:

9           On appeal, [petitioner] contends that the trial court erred by using the procedures
            set out in 1538.5 on the renewal of his motion.  He accurately asserts that section
            1538.5 sets forth the proper procedure to be applied in cases challenging the
10          seizure of evidence, but that this statutory procedure does not have specific
            application when the defendant challenges the admissibility of his or her statement
11          on Fifth Amendment grounds.  (*People v. Superior Court (Zolnay)* (1975) 15
            Cal.3d 729, 733-734, cert. den. 429 U.S. 816.)  However, we find no error on the
12          trial court's part in using a similar procedure to review the motion before it.

13
            In order to comply with due process, a criminal defendant has a right at some
14          stage in the proceedings to have a hearing on and a determination of common law
            issues pertaining to whether a statement may properly be admitted into evidence at
15          trial.  (*Jackson v. Denno* (1964) 378 U.S. 368, 376-377 [voluntariness].)
            Although a pretrial ruling is not always binding on the trial court, a defendant is
16          not entitled to two evidentiary hearings on *Miranda* and voluntariness issues.  The
            trial court would be within its authority to refuse to hear a renewed motion
17          challenging the admissibility of a defendant's statement on these grounds after a
            full pretrial hearing on these issues.  (*People v. Clark* (1992) 3 Cal.4th 41, 199,
18          cert. den. 507 U.S. 993 [Miranda]; (*People v. Superior Court (Zolnay)*, *supra*,
            (1975) 15 Cal.3d at p. 735 [Miranda]; *Saidi-tabatabai v. Superior Court* (1967)
19          253 Cal.App.2d 257, 266 [voluntariness].)  Once a defendant has had a
            suppression motion hearing before a magistrate and renews that motion in the trial
20          court, a trial court procedure mirroring that set forth in section 1538.5 affords the
            defendant a fair opportunity to litigate a *Miranda* objection.  (*People v. Smithson*
21          (2000) 79 Cal.App.4 th 480, 497.)

22          This procedure was used in this case.  The trial court considered the evidence
            adduced at the pretrial hearing and new evidence that [petitioner] found since the
23          time of that hearing.  The use of this procedure on a renewed statutory motion to
            suppress has been found to consistent with due process rights.  (*People v. Hansel*
24          (1992) 1 Cal 4 th 1211, 1218-1222.)  In like manner, the use of a similar

25
        ――――――――――――――
26      [14]  Petitioner is clearly flailing at this point.  Petitioner appeared to have a clear memory at
        the time of his statement.  He did not complain about forgetfulness.

1     procedure in these issues would not implicate [petitioner's] federal due process
rights.  Thus, we find no procedural impropriety at the trial court's hearing on the
2     renewed motion to suppress [petitioner's] April 4 statement.[15]

3  Exh. 12 AG's reply at 33-34.

4          Petitioner has not shown that the statutory procedure used or the court of appeal

5  ruling were contrary to federal law.  While trial counsel may have erred in the type of hearing

6  requested, the court of appeal was clear that the hearing did not violate petitioner's due process

7  rights.  In both hearings the trial court ruled that the admission was voluntary and complied with

8  Miranda.  The court of appeal upheld the trial court's ruling and found the admission to be

9  knowingly, intelligent and voluntary.  Respondent's Reply, Exh. 12 at 35-37.  If counsel did err

10  by choosing the incorrect type of hearing, it was harmless error.  Petitioner has not shown he

11  suffered prejudice as the suppression hearing used by the court did not violate the federal

12  constitution.

13          Petitioner has not shown that he received ineffective assistance of trial counsel

14  with respect to the admission of the April 2 and April 4 statements.  The court of appeal held that

15  the statements were properly admitted into evidence.  Thus, any errors that trial counsel made

16  were harmless.  No evidentiary hearing is required for either statement.

17          <u>Deposition</u>

18          In claim 11 of the amended petition, petitioner alleges that Parovel suffered from

19  an undisclosed memory impairment during the trial, that violated petitioner's right to confront

20  and cross examine him.  Petitioner relies on Parovel's trial testimony at a 2002 Texas murder

21  trial where he testified, "I have a memory problem due to an accident I suffered in '94.", in

22  response to some questions.  AP, Exh. D at 40.  Parovel made only one more vague reference to

23  the memory problem during his Texas trial testimony.

24  \\\\\

25

26      [15] In light of this conclusion we need no address [petitioner's] additional contention that
the trial court's failure to conduct a second full hearing on this issue fatally infected its ruling.

1    Petitioner contends that this memory impairment exists and would explain many

2    of Parovel's inconsistent statements in the instant case.  Petitioner requests that the court issue a

3    deposition subpoena, have the United States Marshal for the Western District of Texas serve the

4    subpoena and have the United States Marshal for the Eastern District of California pay any fees

5    in connection with the deposition.  Parovel's current whereabouts are unknown but a Texas

6    investigator retained by petitioner has located an address where Parovel's wife lives.[16]

7    Rule 6 of the Rules Governing § 2254 cases deal with discovery in habeas cases.

8    Rule 6(a) provides that the court may, for good cause, allow discovery and may limit the extent

9    of discovery.  Rule 6(b) requires a party requesting discovery to provide reasons for the request,

10   and to specify any requested documents.  Unlike civil litigants, a habeas petitioner is not

11   presumptively entitled to discovery.  See Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir.1999).

12   "Habeas is an important safeguard whose goal is to correct real and obvious wrongs.  It was

13   never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its

14   existence.' " Id. at 1067.  "A habeas petitioner does not enjoy the presumptive entitlement to

15   discovery of a traditional civil litigant." Id. at 1068.  "The availability of any discovery during a

16   habeas proceeding is committed to the sound discretion of the district court." Campbell v.

17   Blodgett, 982 F.2d 1356, 1358 (9th Cir.1993)."  Good cause may be shown " 'where specific

18   allegations before the court show reason to believe that the petitioner may, if the facts are fully

19   developed, but able to demonstrate that he is ... entitled to relief.' " Bracy v. Gramley, 520 U.S.

20   899, 908-09, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997).

21   Most importantly, Parovel already testified that his inconsistent statements were a

22   result of his lying to the police, and petitioner provides no reason to doubt that explanation.

23   Furthermore, Parovel's testimony of the incident was corroborated by Rozadilla and more

24   importantly, by petitioner's own statements regarding the incident.  If Parovel had a memory

25   

26   [16] The defendant in the Texas case, was Parovel's brother in law.

28

1    impairment, it does not seem to have affected his testimony at petitioner's trial.  Ultimately,

2    petitioner has not demonstrated how any memory impairment, if proven, would benefit

3    petitioner.  Petitioner's request seems nothing more than a fishing expedition, which is denied.

4              Accordingly, IT IS HEREBY ORDERED that petitioner's motion for an

5    evidentiary hearing and leave to seek a deposition of an out of state witness (docket # 72) is

6    denied.

7    DATED:    07/28/09

8                                              /s/ Gregory G. Hollows

9                                              _____
                                               GREGORY G. HOLLOWS
                                               UNITED STATES MAGISTRATE JUDGE

10
     ggh:ab
11   bris2175.evi

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26